688 A.2d 97

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. REGINALD JORDAN, DEFEN-DANT–APPELLANT AND CROSS–RESPONDENT.

Argued November 18, 1996—Decided February 6, 1997.

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for appellant and cross-respondent (*Susan L. Reisner,* Public Defender, attorney).

*Linda K. Danielson,* Deputy Attorney General, argued the cause for respondent and cross-appellant (*Peter G. Verniero,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, the primary issue is whether the failure of the trial court to give jury instructions in accordance with *State v. Hampton,* 61 *N.J.* 250, 294 *A.*2d 23 (1972), and *State v. Kociolek,* 23 *N.J.* 400, 129 *A.*2d 417 (1957), both individually and in the aggregate, constitutes plain error. We also consider whether the *Hampton* and *Kociolek* charges are necessary when the trial court gives a general credibility charge.

## I.

Early Sunday morning, October 27, 1991, Calvin Lattany was driving to his girlfriend's house on Lawrence Street in New Brunswick. Lattany stopped on Nelson Street to speak to twelve-year old John Lambert. While Lattany and Lambert conversed, two young men walked towards them from a housing complex. The two men, Kenneth Dunlap and Joseph Thomas, approached Lattany. Lattany told them he wanted to purchase some heroin.

Thomas and Dunlap decided to rob Lattany once he took out the money for the drugs and they went to see if defendant, Reginald Jordan, had any heroin. Defendant agreed to participate and retrieved a gun. Dunlap and Thomas returned to Lattany and said they had located some heroin and that Lattany was to come with them. Lattany took some steps into the apartment complex when defendant appeared with a gun and pointed it at Lattany's head. Both Dunlap and Thomas held Lattany from behind. One of the men took the $30.00 Lattany was holding. Both Dunlap and Thomas tried to reach into Lattany's pockets to retrieve the rest of his money. Lattany resisted and the group moved him into a darker area.

Lattany's refusal to give up all of his money frustrated defendant. A struggle ensued, defendant aimed the gun at Lattany, the gun discharged, and Thomas, one of the robbers, was killed. Thomas was standing directly behind Lattany, who ducked just as the gun fired, and as a result, the bullet hit Thomas in the head. Thomas was pronounced dead on arrival at Perth Amboy General Hospital.

The police received several phone calls naming defendant and Dunlap as suspects. Detective John Selesky of the New Brunswick Police Department spoke with Dunlap. Dunlap failed to identify either himself or defendant as participants in the incident. Some time later, Lattany went to the police station and gave a statement. In Lattany's statement, however, he stated that they asked him if he wanted to buy drugs, but he declined. Lattany identified defendant and Thomas from a photo display.

Detectives John Selesky and Charles Clark arrested defendant at his sister's house in Franklin Township. Defendant, after being advised of and waiving his rights, gave a statement to the police. Defendant explained that he, Thomas, and Dunlap, were attempting to rob someone and the wrong guy was shot. Defendant explained that Lattany had ducked, the gun fired, and Thomas was shot and killed. After defendant's oral admissions, the police decided to tape-record a statement by defendant. In the tape-recorded version, defendant stated that he, Dunlap, and Thomas decided to rob a man seeking to purchase drugs, and in preparation for the robbery he retrieved a gun from a nearby car. Defendant stated that he knew little about guns and that he pulled the gun on Lattany as his cohorts searched him for money. Defendant stated that as his cohorts searched Lattany's pockets, Lattany began to struggle with the gun. Lattany smacked the gun, defendant asserted, causing it to discharge a bullet that hit Thomas in the head. Defendant contended that he tossed the gun into a garbage can and hid, taking nothing from the intended robbery victim.

A Middlesex County grand jury indicted defendant for murder, attempted murder, armed robbery, and possession of a weapon for an unlawful purpose. Defendant pled not guilty.

A hearing was held on the admissibility of the two statements made by defendant after his arrest. Defendant argued that he did not intelligently and voluntarily waive his rights and that the State should have asked defendant if he was under the influence of any drugs or alcohol before any statement was taken. Defendant added that the tape-recording of the statement was unnecessarily delayed. The State responded that defendant was contending that his statement was coerced because defendant regretted what he initially stated to the police. The trial court ruled the statements admissible, finding that under the totality of the circumstances, the State established beyond a reasonable doubt that defendant knowingly, intelligently, and voluntarily gave the statements.

In addition to the out-of-court statements of defendant, the State presented the testimony of the robbery victim, Lattany, and the surviving accomplice to the robbery, Dunlap, to support its position that defendant knowingly or purposely fired the gun. Both state witnesses admitted, on direct examination, lying to the police when first questioned about their involvement in the incident.

Lattany testified that he was robbed by Dunlap and Thomas when he attempted to purchase drugs. He explained that during the incident, defendant pulled a gun and pointed it at his head as the other two men stood behind him, holding him, and attempted to get into his pockets. Lattany testified that defendant pulled a gold chain off his neck, took a step back, aimed the gun at Lattany's head, and fired. Lattany explained that he moved out of the way just as the gun fired, resulting in the fatal injury to Thomas. Finally, Lattany stated that he never hit or made any contact with defendant or the gun.

Pursuant to a plea bargain, Dunlap also testified for the State. Dunlap stated that during the robbery, defendant became agitated when Lattany refused to give up his money. Dunlap testified that

defendant pointed the gun at Lattany's face and that somehow Lattany moved when defendant fired, resulting in Thomas being shot. Finally, Dunlap corroborated Lattany's testimony that at no time did Lattany make contact with the gun or with defendant.

Lambert was the main defense witness. Lambert could only indicate, however, that he heard the gunshot and then saw Lattany run toward him. Lambert testified that he was tying his shoes when the shot was fired and did not witness the confrontation between the three assailants and Lattany.

After deliberating less than two hours, the jury convicted defendant on all counts. On the murder conviction, defendant was sentenced to life imprisonment with a thirty-year parole disqualifier. The sentences on the other counts were to run concurrent with the murder sentence.

On appeal, the Appellate Division majority expressed its concern about the apparent frequency with which trial courts were omitting the *Hampton* charge from their instructions. Nevertheless, it concluded, after a careful review of the record, that the failure of the trial court to charge in accordance with *Hampton* did not, in this context, constitute plain error. *State v. Jordan,* 285 *N.J.Super.* 589, 594–95, 667 *A.*2d 1094 (1995). The court observed that defendant did not deny that he killed Joseph Thomas. *Id.* at 595, 667 *A.*2d 1094. The majority explained that the defense argued that the shooting was accidental, the result of a struggle between defendant and the robbery victim. That assertion was clearly set forth in defendant's recorded statement. *Ibid.* Because the defendant's initial oral statement, recounted by two detectives, presented a different version of the incident, the jury had to decide which version of the stories to accept as credible. *Ibid.* The majority concluded: "We consider the jury's verdict a clear statement that it did not consider credible defendant's tape-recorded version of what occurred." *Id.* at 596, 667 *A.*2d 1094.

With respect to the court's failure to give a *Kociolek* charge, the court refuted defendant's argument that his oral statement was the critical evidence. Instead, "[w]hat was critical to the State's

case was whether the jury accepted the testimony of Lattany and Dunlap, for the credibility of both was subject to serious challenge." *Id.* at 597, 667 *A.*2d 1094. Despite factors weighing against their credibility, the court found that the jury accepted their testimony. *Ibid.* Hence, the lack of a *Kociolek* charge was also not plain error. *Ibid.*

Judge Pressler, dissenting, observed that if the jury believed the recorded statement, defendant would have been convicted of a lesser offense. Therefore, she concluded that because the credibility of the two statements was so critical to the outcome of the case, the court's failure to provide *Hampton* and *Kociolek* charges was plain error. *Id.* at 603, 667 *A.*2d 1094 (Pressler, P.J.A.D., dissenting). Accordingly, Judge Pressler concluded that the case should be reversed and remanded. *Ibid.* Although Judge Pressler observed that she need not decide the question in this case, she nevertheless expressed the view that the failure to provide a *Hampton* charge was plain error *per se.* *Id.* at 606, 667 *A.*2d 1094.

Defendant filed a notice of appeal as of right. *R.* 2:2–1(a)(2). Defendant also filed a petition for certification on other issues raised but not addressed by the dissenting opinion. We denied that petition. 143 *N.J.* 518, 673 *A.*2d 276 (1996). We nevertheless granted the State's cross-petition for certification that asserts that neither *Hampton* and *Kociolek* charges are necessary when the trial court gives a general credibility charge. 146 *N.J.* 498, 683 *A.*2d 201 (1996).

## II.

### *Hampton*

In *State v. Hampton, supra,* 61 *N.J.* 250, 294 *A.*2d 23, the defendant was convicted of several crimes stemming from the kidnapping and shooting of Mrs. Mary Rayborn. The defendant broke into Rayborn's apartment and forced her at gunpoint to drive him out of town. At one point during the hour-long ordeal

the car stopped and Mrs. Rayborn attempted to escape. When she exited the car, the defendant shot her. The victim was, however, able to escape. *Id.* at 255–56, 294 *A.*2d 23.

Following the defendant's arrest, he gave a statement to the police in which he corroborated the victim's version of the facts, adding only that when she exited the car, he jumped up and the gun fired. *Id.* at 259–60, 294 *A.*2d 23. He implied that the shooting was accidental. *Id.* at 260, 294 *A.*2d 23. The defendant received his *Miranda* warnings both after he was arrested and again before he made his statement to the police. *Ibid.*

During the defendant's trial, the issue of the voluntariness of his statement was raised and a hearing was subsequently held outside the presence of the jury. *Ibid.* The defendant testified during the hearing. *Ibid.* His testimony raised no substantial conflict with respect to the *Miranda* warnings, his execution of the waiver, or his willingness to give a statement. The trial court ruled the statement admissible. *Id.* at 261, 294 *A.*2d 23. Hampton's trial continued in the presence of the jury and the State offered the defendant's statement into evidence. *Ibid.* Defense counsel objected, noting that defendant was not going to testify on the subject. *Ibid.* The trial court, cognizant of the rule that the court could not inform the jury of an earlier ruling that the confession was voluntary, found the statement admissible and informed the jury that the court would not decide the voluntariness of the statement. *Ibid.* Instead, the trial court instructed the jury that the decision whether the statement was voluntary or not was for the jury. *Ibid.* The court further instructed the jury that if it found that the statement was not voluntary it should disregard it. *Ibid.*

Addressing defendant's claim that the jury charge was prejudicial, we agreed with the Appellate Division and held that the charge as a whole was not prejudicial. *Id.* at 263, 294 *A.*2d 23. Allowing the jury to address the voluntariness of the confession as if there were a "factual dispute as to whether the *Miranda* rule had been complied with, and whether defendant's rights thereun-

der had been waived ... benefitted rather than prejudiced [defendant]." *Id.* at 263–64, 294 *A.*2d 23.

We concluded that "there is no constitutional obligation to submit to the jury for determination the issue of whether the *Miranda* warnings were given to a defendant and the rights described thereby waived by him before he confessed. Since the question involves the competency of evidence, decision thereon traditionally rests with the trial judge." *Id.* at 267, 294 *A.*2d 23. In the future, however, we required that

> the trial court alone shall determine (1) whether the *Miranda* warnings were given to the accused and his rights thereunder waived by him before the confession was given; and that if it finds the warnings were not given, or if given the rights not waived, the confession must be excluded, and (2) if those conditions were satisfied, whether in light of all those circumstances attending the confession it was given voluntarily. If these questions are resolved in favor of the State, then, without being advised of the court's decision, the jury shall be instructed that they should decide whether in view of all the same circumstances the defendant's confession is true. If they find that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence.
>
> [*Id.* at 272, 294 *A.*2d 23.]

*See also State v. Thomas,* 76 *N.J.* 344, 366, 387 *A.*2d 1187 (1978) (reaffirming *Hampton* principle that trial court is sole arbiter of voluntariness of defendant's statements and rejecting defendant's invitation to overrule decision); *State v. Bowman,* 165 *N.J.Super.* 531, 537–39, 398 *A.*2d 908 (App.Div.1979) (holding prosecutor's statement to jury on summation that trial court had previously found defendant's two confessions voluntary constituted reversible error even though trial court gave *Hampton* charge, because it failed to instruct jury to disregard prosecutor's statement).

The New Jersey Rules of Evidence codified the holding in *Hampton* and state:

> Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury. In such a hearing the rules of evidence shall apply and the burden of persuasion as to the admissibility of the statement is on the prosecution. If the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but *shall* be instructed to disregard the statement if it

finds that it is not credible. If the judge subsequently determines from all of the evidence that the statement is not admissible, the judge shall take appropriate action.

[*N.J.R.E.* 104(c) (emphasis added).]

The comment following *N.J.R.E.* 104(c) notes that in 1976 the 1967 New Jersey Rule was amended in response to *State v. Hampton. N.J.R.E.* 104(c) cmt. The comment also explains that the rule's "application is limited to defendant's statements alone, and it does not purport to deal with the admissibility of other evidence such as identification evidence." *Ibid.*[1]

### Kociolek

*State v. Kociolek,* 23 *N.J.* 400, 129 *A.*2d 417 (1957), was decided fifteen years prior to *Hampton. Kociolek,* like *Hampton,* addressed issues concerning the admissibility of a defendant's oral statements and the instructions that should be given to the jury regarding those statements. The defendant was convicted of first-degree murder and sentenced to death. However, the death sentence was reversed. *State v. Kociolek,* 20 *N.J.* 92, 118 *A.*2d 812 (1955). During the initial trial, several of the defendant's oral admissions were admitted in evidence through the testimony of witnesses recalling the statements made by the defendant. *Kociolek, supra,* 23 *N.J.* at 405, 129 *A.*2d 417.

We explained that the trial court erred in refusing to charge the jury that it should "receive, weigh and consider such evidence with caution in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." *Id.* at 421, 129 *A.*2d 417. We added that "there are inherent weaknesses in this character of testimony: faulty memory, the danger of error in understanding and repetition." *Ibid.* (citation omitted). Observing that all verbal admissions are to be viewed with caution, we opined "[a]side from the danger of fabrication, verbal admissions are regarded as

---

[1] The Model Jury Charge (revised January 29, 1996) contains a combined *Hampton* and *Kociolek* charge.

unreliable evidence, because experience shows that they are frequently misunderstood, imperfectly remembered, and inadvertently made." *Ibid.* (citation omitted).

The antidote for the general distrust associated with testimony reporting any extra-judicial oral statements, is "an instruction to the jury against trusting overmuch the accuracy of such testimony." *Ibid.* We observed, "verbal precision is of course important to the correct understanding of any verbal utterance, whether written or oral, because the presence or absence or change of a single word may substantially alter the true meaning of even the shortest sentence." *Id.* at 421–22, 129 *A.*2d 417.

## III.

### Plain Error Standard

*Rule* 2:10–2 reads:

Any error or omission shall be disregarded by the appellate court unless it is such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

In this case, defendant did not request and the trial court did not give a *Hampton* or *Kociolek* charge. Defendant seeks reversal under the "plain error" standard, arguing that those omissions from the trial court's instructions were "clearly capable of producing an unjust result."

"Appropriate and proper charges to a jury are essential for a fair trial." *State v. Green,* 86 *N.J.* 281, 287, 430 *A.*2d 914 (1981). A court must provide proper instructions to a jury because the "faithful performance of a court's duty of expounding the law for the jury's guidance and instruction, requires a plain and clear exposition of the issues." *Id.* at 288, 430 *A.*2d 914. The jury charge should therefore cover all essential matters. *Ibid.; see, e.g., State v. Masino,* 94 *N.J.* 436, 447, 466 *A.*2d 955 (1983) (noting trial court's kidnapping charge to jury, although not paragon of clarity, allowed jury to consider necessary factors).

▇ Proper jury charges in criminal cases are even more critical. In *Green, supra,* this Court observed: "This requirement of a charge on a found matter is more critical in a criminal case when a person's liberty is at stake." 86 *N.J.* at 289, 430 *A.2d* 914. Erroneous instructions on matters or issues that are material to the jury's deliberation are presumed to be reversible error in criminal prosecutions. *State v. Warren,* 104 *N.J.* 571, 579, 518 *A.2d* 218 (1986).

▇ For an error to constitute plain error, however, not every possibility of an unjust result will suffice. With a jury trial, the possibility must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.2d* 1 (1971).

▇ In considering a jury charge, plain error is

Legal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.

[*State v. Hock,* 54 *N.J.* 526, 538, 257 *A.2d* 699 (1969), *cert. denied,* 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.2d* 797 (1970); *accord State v. Lucas,* 30 *N.J.* 37, 152 *A.2d* 50 (1959).]

In determining whether a charge was erroneous, the charge must be read as a whole. *State v. Wilbely,* 63 *N.J.* 420, 422, 307 *A.2d* 608 (1973). "Portions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." *Ibid.* (citations omitted). No party is entitled to have the jury charged in his or her own words; all that is necessary is that the charge as a whole be accurate. *Largey v. Rothman,* 110 *N.J.* 204, 206, 540 *A.2d* 504 (1988); *State v. Thompson,* 59 *N.J.* 396, 411, 283 *A.2d* 513 (1971).

▇ Some jury instructions, however, are so crucial to the jury's deliberations on the guilt of a criminal defendant that errors in those instructions are presumed to be reversible. "Errors impacting directly upon these sensitive areas of a criminal trial are poor candidates for rehabilitation" under the plain error theory. *State*

*v. Simon,* 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979). For example, the court must always charge on the elements of the crime. *State v. Vick,* 117 *N.J.* 288, 291, 566 *A.*2d 531 (1989). In *State v. Orecchio,* 16 *N.J.* 125, 106 *A.*2d 541 (1954), the Court observed:

> No matter how abhorrent the offense charged nor how seemingly evident the guilt, [everyone] is entitled to a fair trial surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty in English speaking countries.
>
> [*Id.* at 129, 106 *A.*2d 541.]

## IV.

The Appellate Division has held that the failure to provide a requested *Hampton* instruction is reversible as harmful error. In *State v. Boyle,* 198 *N.J.Super.* 64, 69, 486 *A.*2d 852 (App.Div.1984), the court noted that "the mandate in *Hampton* and the directive in the Rules of Evidence are designed to 'insure to a defendant an unfettered factual consideration by the jury of the credibility of all or part of his confession.'" *Id.* at 74, 486 *A.*2d 852 (citing *Bowman, supra,* 165 *N.J.Super.* at 537, 398 *A.*2d 908). The court concluded that the failure of the trial court to apprise the jury of its responsibility regarding the assessment of the statement had the clear capacity to "seriously prejudice defendant's rights." *Ibid.* (citing *Green, supra,* 86 *N.J.* at 287–89, 430 *A.*2d 914.)

More recently, in *State v. Jackson,* 289 *N.J.Super.* 43, 672 *A.*2d 1254 (App.Div.1996), the trial court denied the defendant's request for *Hampton* and *Kociolek* charges. The Appellate Division found that because the jury's consideration of the defendant's statement could have been central to the case, a clear instruction was mandatory. *Id.* at 54, 672 *A.*2d 1254. In a footnote, the court explained, "it is a close question whether the failure to give a requested *Hampton/Kociolek* charge is *per se* reversible error." *Id.* at 54 n. 2, 672 *A.*2d 1254. Commenting on Judge Pressler's dissent in *Jordan, supra,* the court noted, "we cannot subscribe to the *Jordan* dissent's *per se* error rule, even for a requested charge." *Ibid.* The *Jackson* court explained that in an appropriate case the error may be harmless:

For instance if the crime had been videotaped and it was committed before numerous unimpeachable witnesses with strong additional circumstantial evidence, the failure to give a requested *Hampton/Kociolek* charge concerning a defendant's oral statements should not justify the time or expense of a retrial.

[*Ibid.*]

The Appellate Division has also held that the failure of a trial court to provide a *Hampton* charge, notwithstanding the defendant's failure to request such a charge, constitutes plain error. For example, in *State v. Nutter*, 258 *N.J.Super.* 41, 609 *A.*2d 65 (App.Div.1992), the court held that it was error not to instruct a jury on its duty to determine if the defendant's statement made to the police was credible. *Id.* at 60, 609 *A.*2d 65. Because the court had already decided a retrial was necessary on other grounds, it provided no further comment on the *Hampton* issue. *See also State v. Jones*, 287 *N.J.Super.* 478, 484, 671 *A.*2d 586 (App.Div. 1996) (holding that trial court committed reversible error in not instructing jury to determine credibility of incriminating statements attributed to defendant by state trooper).

The Appellate Division, however, has also held that the failure to give a *Hampton* charge is *not* plain error. In *State v. Setzer*, 268 *N.J.Super.* 553, 634 *A.*2d 127 (App.Div.1993), *certif. denied*, 135 *N.J.* 468, 640 *A.*2d 850 (1994), the defendant had commenced a relationship with Traci Horn, who was engaged in a custody battle with her former husband over their daughter. The court had awarded temporary custody of the child to Stewart Horn, Ms. Horn's ex-husband. *Id.* at 558, 634 *A.*2d 127. *Ibid.* On May 1, 1990, the defendant and Traci set Stewart's apartment on fire.

After an investigation, the defendant and Traci were apprehended. *Id.* at 560, 634 *A.*2d 127. Traci admitted her involvement in setting the fire and implicated the defendant. *Ibid.* The defendant was advised of his rights, signed a *Miranda* card, and gave a statement. However, his statement was neither recorded nor taped. *Ibid.* Initially, he denied involvement, but when confronted with Traci's admissions the defendant admitted his involvement. *Ibid.*

The court then addressed the defendant's claim that the lack of a *Hampton* charge constituted plain error. *Id.* at 562, 634 *A.2d* 127. Reviewing the charge as a whole, the court concluded:

> The trial judge clearly and repeatedly instructed the jury that it was to consider the credibility of all of the testimony, which included the testimony as to the defendant's statement. The trial court's omission of the *Hampton* instruction in this instance was therefore, not clearly capable of producing an unjust result.
>
> [*Id.* at 565, 634 *A.2d* 127.]

The court added however, that "strict adherence to *Hampton* will avoid similar appellate review in future cases." *Ibid.; see also State v. Laboy,* 270 *N.J.Super.* 296, 637 *A.2d* 184 (App.Div.1994) (finding lack of *Hampton* charge may constitute reversible error when coupled with other errors).

## V.

■ Whether requested or not, whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence the *Hampton* instruction, directing the jury to determine the credibility of the statements without any knowledge that the court has already determined the issue of voluntariness, should be given. By using the term "shall" in *N.J.R.E.* 104(c), we expressly recognized that a *Hampton* charge is required. Because of the critical role that a defendant's oral and written statement may have, a jury should be advised to focus on the credibility of those statements. Indeed, unless a defendant specifically requests that the *Hampton* charge not be given, and the trial court satisfies itself with written findings that such reasons have merit, a *Hampton* charge should always be given.

■ The failure of a court to give a *Hampton* charge, however, is not reversible error *per se.* It is reversible error only when, in the context of the entire case, the omission is "clearly capable of producing an unjust result...." *R.* 2:10–2. That problem would arise most frequently when the defendant's statement is critical to the State's case and when the defendant has challenged the statement's credibility. If, however, the defendant's statement is unnecessary to prove defendant's guilt because there is other

evidence that clearly establishes guilt, or if the defendant has acknowledged the truth of his statement, the failure to give a *Hampton* charge would not be reversible error.

In this case, there was substantial additional evidence of defendant's guilt apart from defendant's statement. Defendant did not deny he killed Thomas. Two eyewitnesses (one a co-conspirator in the incident and the other the robbery victim) testified as to the criminal event. Their testimony corroborated defendant's initial oral statement. The case, therefore, essentially boiled down to which version of the events the jury believed: the earlier version contained in defendant's initial statement where he admitted shooting the wrong person which was consistent with the eyewitness accounts; or the version found in the tape-recorded statement in which he stated that a struggle between himself and the robbery victim caused the gun to discharge.

Based on the trial court's instructions to the jury, and defense counsel's arguments urging the jury to believe defendant's taped statement and find that the first statement to the police "never existed," we are satisfied that the jury knew that it had to decide between the credibility of defendant's two statements. *See State v. Maldonado*, 137 *N.J.* 536, 575, 645 *A.2d* 1165 (1994) ("[T]he circumstances of the trial highlighted [the need to determine credibility] more than any charge could have."). Given the jury's focus on those two statements, the *Hampton* charge was not required.

Nevertheless, the *Hampton* charge should have been given based on the directive in *N.J.R.E.* 104(c). Here, however, the corroborating testimony of the two eyewitnesses constituted suffi-cient evidence to establish defendant's guilt, and the omission of the *Hampton* charge was not plain error capable of producing an unjust result.

## VI.

There are only a handful of reported Appellate Division deci-sions that address whether the failure to charge pursuant to

*Kociolek,* is reversible as plain error. None of those cases, however, have held that the lack of a *Kociolek* charge constitutes plain error.

In *State v. Campisi,* 47 *N.J.Super.* 455, 136 *A.*2d 292 (App.Div. 1957), *certif. denied,* 26 *N.J.* 304, 139 *A.*2d 589 (1958), the defendant was arrested for possession of heroin. Upon his arrest, the defendant initially denied any knowledge of the narcotics that police discovered in a jacket inside the defendant's closet. *Id.* at 457, 136 *A.*2d 292. The defendant later admitted to a detective that he had used heroin. *Id.* at 457–58, 136 *A.*2d 292. The defendant also privately admitted to a detective that he owned narcotics and used heroin. *Id.* at 458, 136 *A.*2d 292. At trial, the detective testified about the admissions made by the defendant. *Ibid.*

The court rejected the defendant's claim that the lack of a *Kociolek* charge constituted plain error and observed that "we perceive no plain error affecting the substantial rights of this appellant in the context of the whole of the proofs." *Id.* at 460, 136 *A.*2d 292. The court remarked:

> While we apprehend the dangers incident to resting a concept of guilt upon such verbal admissions in that there should be special protection against the possibility of faulty memory, error in accurate understanding and repetition, ... we sense in the proofs of this case, an absence of such injustice.
>
> [*Ibid.*]

Again, in *State v. Travers,* 70 *N.J.Super.* 32, 174 *A.*2d 747 (App.Div.1961), the court held on the basis of the totality of the evidence presented by the prosecution in the defendant's trial for armed robbery that the failure to charge the jury to consider the defendant's oral statements with caution, was not plain error. *Id.* at 38, 174 *A.*2d 747.

More recently, in *State v. Laboy,* 270 *N.J.Super.* 296, 637 *A.*2d 184 (App.Div.1994), the *Hampton* and *Kociolek* charges were not requested and not given. Because of its disposition of the appeal, the court was not required to decide whether the failure to give the charges individually or in the aggregate constituted plain error. The court however, noted only that "viewed in isolation ...

these errors would not have the capacity to lead to an unjust result." *Id.* at 310–11, 637 *A.*2d 184. The court also opined that the failure to charge under *Kociolek,* in combination with other errors, such as the failure to provide a *Hampton* charge, at least arguably could have affected the substantive rights of the defendant. *Id.* at 311, 637 *A.*2d 184.

Like the *Hampton* charge, the *Kociolek* charge should be given whether requested or not. Oral statements should be viewed with caution because of the "generally recognized risk of inaccuracy and error in communication and recollection of verbal utterness and misconstruction by the hearer." *Kociolek, supra,* 23 *N.J.* at 421, 129 A.2d 417. However, failure to give the charge is not reversible error *per se.* There may be a rare case where failure to give a *Kociolek* charge alone is sufficient to constitute reversible error, or there may be a case where the omission of a *Kociolek* charge in combination with other errors (for example, no *Hampton* charge) may be reversible as plain error. Ultimately, whether the failure to give a *Kociolek* charge is capable of producing an unjust result will depend on the facts of each case.

In this case, our determination that the failure to give the *Hampton* charge is not plain error also supports our holding that the failure to give the *Kociolek* charge, in isolation, or in combination with the failure to give the *Hampton* charge, did not have the capacity to bring about an unjust result.

## VII.

Finally, the State argues that in view of the trial court's general and comprehensive credibility instructions to the jury concerning its role in assessing credibility, specific credibility instructions regarding a defendant's statements are not necessary for a fair trial. We disagree. General jury instructions may not always sufficiently impart to a jury its responsibilities and limitations. *See State v. Wilson,* 128 *N.J.* 233, 240, 607 *A.*2d 1289 (1992) (holding that failure of trial court to instruct jury that State must prove, beyond reasonable doubt, killing was not committed in heat

of passion, required reversal of murder conviction, even though there was general charge that state was required to prove each element of offenses beyond reasonable doubt).

Two Appellate Division opinions address the issue of whether general credibility instructions are sufficient in view of the *Hampton* directive. In *State v. Nutter, supra,* the court found that the trial court failed to instruct the jury to determine if the defendant's statement to the police was credible. 258 *N.J.Super.* at 59, 609 *A.*2d 65. The court observed that "nothing in the charge, taken as a whole, can be viewed as ameliorating this error which is conceded by the State and which could have affected the outcome here." *Id.* at 60, 609 *A.*2d 65.

The Appellate Division has also held, however, that general credibility instructions are sufficient absent a specific *Hampton* charge. In *State v. Setzer, supra,* the trial court failed to include a *Hampton* charge, but included a general credibility charge. 268 *N.J.Super.* at 563–64, 634 *A.*2d 127. On appeal, the Appellate Division compared the trial court's charge with the model jury charges. *Id.* at 564, 634 *A.*2d 127. The Appellate Division concluded that there was no plain error, noting:

> The trial judge clearly and repeatedly instructed the jury it was to consider credibility of all of the testimony which included the testimony as to defendant's statement. The trial court's omission of the *Hampton* instruction in this instance was therefore, not clearly capable of producing an unjust result.
>
> [*Id.* at 565, 634 *A.*2d 127.]

The *Setzer* court cautioned, however, that "strict adherence to *Hampton* will avoid similar appellate review in future cases." *Ibid.*

The *Hampton* charge better safeguards, a defendant's right to a fair trial than does a general credibility instruction. Given the mandate of *N.J.R.E.* 104(c) and the fact that a jury should be given more guidance, rather than less, especially in those cases in which a defendant's statements are critical to the State's case, specific *Hampton* and *Kociolek* instruction should be given. An appropriate instruction is included in the Model Jury Charges.

## VIII.

We emphasize that the *Hampton* and *Kociolek* charges are required and that their omission imposes a significant burden on the State to demonstrate that such an error is not plain error. Moreover, that burden will be heightened in a case in which the plain error standard is not applicable, that is, a case in which a defendant has specifically requested those charges and the trial court has refused to give them. We agree, however, with the Appellate Division that on this record the failure to give the *Hampton* charge and the *Kociolek* charge, individually or in combination, is not reversible error *per se.*

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.

*For reversal and remandment*—Justice STEIN—1.

STEIN, J., dissenting.

Based on this record, I conclude that the trial court's omission of the instructions dictated by *State v. Hampton,* 61 *N.J.* 250, 271–72, 294 *A.2d* 23 (1972) and *State v. Kociolek,* 23 *N.J.* 400, 421–22, 129 *A.2d* 417 (1957) constituted plain error and deprived defendant of a fair trial. I would reverse defendant's convictions and remand for a new trial substantially for the reasons set forth in the dissent below. 285 *N.J.Super.* 589, 600–06, 667 *A.2d* 1094 (1995) (Pressler, J., dissenting).