**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2054-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LANDEAN O. MALCOLM,

    Defendant-Appellant.

_____

             Submitted September 27, 2018 – Decided  October 26, 2018

             Before Judges Simonelli and O'Connor.

             On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 13-05-0500.

             Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender II, of counsel and on the brief).

             Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Landean O. Malcolm was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). On appeal, defendant raises the following contention:

> POINT ONE
>
> DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY THE TRIAL COURT'S COMPLETE FAILURE TO PROVIDE THE JURY WITH ANY GUIDANCE ON HOW TO ASSESS THE DEFENDANT'S ALLEGED, UNRECORDED CONFESSION. U.S. CONST.[,] AMEND. V AND XIV; N.J. CONST.[, ART.] I, ¶¶ 1, 9 AND 10. (Not Raised Below).

We reject this contention and affirm.

I.

On the evening of December 24, 2012, Willie Boggs was working as a bouncer at a bar in Plainfield when he was informed that a person inside the bar had entered without paying the cover charge. Boggs testified that as he approached that person, defendant approached Boggs and began yelling that he had paid the person's cover charge. Boggs knew defendant as a regular customer

2                                                                 A-2054-16T3

of the bar whom he had seen "almost every day" during the five years Boggs worked there. Gregory Troutman and Kevin Boyce, who were working as bouncers that evening, testified that they also knew defendant as a frequent customer of the bar.

Boggs testified that he told defendant several times to go to the payment window in the vestibule of the bar and speak to the woman collecting the money to verify he had paid for the other person. Defendant refused and continued yelling at Boggs. Defendant finally went to the payment window and began "overly-aggressively" yelling at the woman at the payment window. Boggs tried to calm defendant down, but defendant "turned with violent gestures," as if he was ready to fight, and continued yelling. As a result, Boggs decided to escort defendant out of the bar. Boggs told defendant, "let's go, it's time to go home," and grabbed his arm, and led him out the door of the bar.

Boggs testified that defendant fell as he exited the bar. As he bent down to help defendant get up, he saw a knife with a four- or five-inch blade in defendant's right hand that had snagged the left side of his shirt. He touched his left side and found defendant had stabbed him in the stomach. Boggs "went on the defensive" to protect himself and began fighting with defendant. During the struggle, defendant slashed him across the right side of his head with the knife.

3

He tried to disarm defendant as they struggled, and defendant continued to try to stab him.

Boggs also testified that defendant still had the knife in his hand when he got defendant on the ground. Boyce was eventually able to take the knife from defendant's hand. Defendant then bit Boggs's right thumb. Boggs got up and Boyce and Troutman held defendant down until the police arrived. Boggs received staples in his stomach and stiches in his head and has scars from his injuries. Boggs did not see what Boyce did with the knife. The knife was never recovered.

Troutman testified that when he came to the payment window, he saw defendant was resisting Boggs and Boyce, and yelling and he tried to calm defendant down. Troutman then went back into the bar. When he returned to the vestibule, he saw that Boggs and Boyce were outside and Boggs had defendant on the ground. He went over to assist Boggs and saw that defendant had a knife in his hand and Boggs was trying to take it from him. He also saw blood coming from Boggs's head. He held defendant down while Boggs got up. He saw that the knife had been removed from defendant's hand, but did not know what happened to it. The police arrived and took custody of defendant.

Boyce testified that he heard a man exchanging "loud words" with Boggs in the vestibule, but the man was not defendant. He saw Boggs throw the man out the door and they started fighting. He then saw the man swinging a knife and saw Boggs get hit in the head with the knife and blood coming from his head. The man fell and Boyce stepped on his wrist to get the knife out of his hand. He got the knife out of the man's right hand and kicked it away. He did not know what happened to the knife. He and Troutman held the man down until the police arrived.

Lieutenant Daniel Passarelli from the City of Plainfield Police Department testified that when defendant arrived at police headquarters, he was uncooperative, combative, threatened to kill the police officers, and resisted arrest. Later, after having calmed down while in a holding cell, defendant called Passarelli over to the cell, started talking, and said he wanted to tell Passarelli what happened at the bar. When defendant started telling Passarelli what happened at the bar, Passarelli told him to stop talking and gave defendant his Miranda[1] warnings. After stating he understood his rights, defendant began relaying what happened. When defendant got to the point where he stabbed a

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2054-16T3

bouncer, Passarelli said, "are you sure you want to say all this. With your rights in mind, are you sure you want to continue with this." Defendant responded, "I don't care" and continued telling Passarelli what happened. Defendant admitted he got into a fight with a bouncer and stabbed him "[i]n the belly . . . with [his] knife" and "tried to kill the mother fucker." Defendant also admitted that when someone told him the police were coming, "he passed the knife off and he didn't know where it went after that." Defendant then stopped talking to Passarelli. Defendant's statement was not recorded because there was no recording equipment in the area. However, Passarelli memorialized what defendant said in a report he prepared immediately after defendant made the statement. On cross-examination, defense counsel questioned Passarelli about defendant's statement and why it was not recorded.

Defendant testified that he had an argument with Boggs over the cover charge. Boggs dragged him to the door to get him out of the bar, and he tried to pass Boggs to get back inside. The two got into a fistfight and defendant fell to the ground. He denied he had a knife and said he did not know where the knife came from. He was aware that Boggs was stabbed, but denied he stabbed him. The police arrived and took him to police headquarters. He denied he gave a statement to Passarelli and said that Passarelli lied about the statement.

A-2054-16T3

## II.

Defendant argues that the State's failure to record his confession violated Rule 3:17(a) and required the trial court to sua sponte charge Model Jury Charges (Criminal), "Statements of Defendant (When Court Finds Police Inexcusably Failed to Electronically Record Statement)" (2005). We disagree.

When a defendant fails to object to an error regarding jury charges, we review for plain error. See State v. Funderburg, 225 N.J. 66, 79 (2016). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough. To warrant reversal . . . an error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (citation omitted) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). In addition, any finding of plain error depends on an evaluation of the overall strength of the State's case. State v. Cotto, 182 N.J. 316, 326 (2005). We discern no plain error here.

Custodial interrogations conducted in a place of detention must be electronically recorded when the person being interrogated is charged with second-degree aggravated assault. R. 3:17(a). As we have held:

> The failure to record the interrogation does not require suppression of a defendant's statement, but it "shall be a factor for consideration by the trial court in determining the admissibility of a statement, and by the jury in determining whether the statement was made, and if so, what weight, if any, to give to the statement." Further, in the absence of recordation, the court "shall, upon request of the defendant, provide the jury with a cautionary instruction."
>
> [State v. Anthony, 443 N.J. Super. 553, 566 (App. Div. 2016) (quoting R. 3:17(d), (e)).]

However, electronic recordation is not required where the statement "is not recorded because electronic recording of the interrogation is not feasible[.]" R. 3:17(b)(i).

Here, the State established that electronic recording of defendant's statement was not feasible because there was no recording system in the area where defendant made the statement and Passarelli did not have access to recording equipment. Accordingly, because there was no violation of Rule 3:17(a), there was no need to provide a cautionary instruction.

A-2054-16T3

Defendant also argues the court erred in failing to sua sponte give a Hampton[2] and Kociolek[3] charge. See Model Jury Charges (Criminal), "Statements of Defendant" (2010). Again, we disagree.

A trial court should provide a Kociolek charge whenever a witness at trial testifies regarding oral statements made by a defendant. Kociolek, 23 N.J. at 421. In such cases, the trial court must provide the jury with an instruction that it "'should receive, weigh and consider such evidence with caution,' in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." Ibid. "[T]he Kociolek charge should be given whether requested or not." State v. Jordan, 147 N.J. 409, 428 (1997).

In addition, a trial court should provide a Hampton charge "whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence" regardless of "[w]hether [the charge is] requested or not[.]" Id. at 425. A jury "shall be instructed that they should decide whether . . . the defendant's [statement] is true[,]" and if they conclude that it is "not true, then

2 State v. Hampton, 61 N.J. 250 (1972).

3 State v. Kociolek, 23 N.J. 400 (1957).

A-2054-16T3

they must . . . disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." Hampton, 61 N.J. at 272.

The failure to give the charges, however, is not always reversible error. Jordan, 147 N.J. at 425, 428. We will only reverse when omission of the charges was clearly capable of producing an unjust result in the context of the entire case. Id. at 425, 429. If the statements were unnecessary to prove the defendant's guilt "because there is other evidence that clearly establishes guilt, or . . . the defendant has acknowledged the truth of his statement," the failure to give a Hampton charge will not require reversal. Id. at 425-26. Likewise, whether the failure to give the Kociolek charge constitutes plain error, "will depend on the facts of each case." Id. at 428.

In State v. Harris, 156 N.J. 122, 183 (1998), our Supreme Court found that failure to give a Hampton and Kociolek charge was not plain error because the cross-examination of the testifying witness was sufficient to test his credibility before the jury. The Court explained that "the principal value of the Kociolek charge is to cast a skeptical eye on the sources of inculpatory statements attributed to a defendant[,]" and opposing counsel's "devastating cross-examination . . . accomplished that end." Ibid.

The Court reached a similar conclusion in State v. Feaster, 156 N.J. 1, 72 (1998), finding that "[t]he very purpose of a Hampton charge is to call the jury's attention to the possible unreliability of the alleged statements made by a criminal defendant."  Because the witness was "under a sustained attack during which his credibility was thoroughly challenged" on cross examination, the failure to give a Hampton instruction was not plain error.  Ibid.

Here, although defendant did not request a Hampton or Kociolek charge, the judge gave an instruction regarding witness credibility at the outset and close of the trial.  In addition, defense counsel cross-examined Passarelli about defendant's statement, and there was other evidence that clearly established defendant's guilt.  Specifically, Boggs testified that he got into a fight with defendant; saw a knife in defendant's hand that snagged the left side of his shirt; touched that side and found he had been stabbed in the stomach; and defendant slashed him across the right side of his head with the knife.  Troutman testified he went to assist Boggs and saw that defendant had a knife in his hand, saw Boggs trying to take the knife away from defendant, and saw blood coming from Boggs's head.  Further, defendant admitted that he got into a fight with Boggs, which contradicted Boyce's testimony it was not defendant who fought with

11

Boggs.  Accordingly, there was no error in the lack of a <u>Hampton</u> or <u>Kociolek</u>
charge.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2054-16T3