**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0410-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTOINE P. JONES,

     Defendant-Appellant.

_____

Submitted September 25, 2019 – Decided October 3, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-03-0925.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On March 20, 2013, a Camden County grand jury returned a seventeen-count indictment charging defendant Antoine P. Jones with second-degree attempted burglary (armed), N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2 (count one); second-degree conspiracy to commit burglary (armed), N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2 (count two); two counts of second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts three and ten); two counts of second-degree unlawful possession of weapons, N.J.S.A. 2C:39-5(b) (counts four and eleven); two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1) (counts five and six); two counts of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (counts seven and eight); first-degree armed robbery, N.J.S.A. 2C:15-1 (count nine); third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (count twelve); third-degree hindering apprehension, N.J.S.A. 2C:29-3(a)(3) (count thirteen); first-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) and (2) (count sixteen); and second-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(3) (count seventeen).[1]

---

[1] The grand jury also indicted co-defendant Juan Law on counts one, two, seven, eight, and nine. The indictment separately charged Law with two counts of third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (counts fourteen and fifteen). Prior to trial, Law pled guilty to first-degree robbery and second-degree burglary.

2                                                      A-0410-17T4

At the conclusion of the trial, the jury found defendant guilty of third-degree conspiracy to commit burglary, as a lesser-included offense on count two; third-degree witness tampering, as a lesser-included offense on count sixteen; and second-degree hindering apprehension or prosecution on count seventeen. The jury acquitted defendant of all of the remaining counts.

The judge merged count seventeen into count sixteen, and sentenced defendant to eight years in prison on count seventeen, and to a consecutive four-year term on count two. Therefore, the judge imposed an aggregate twelve-year sentence.[2] This appeal followed.

On appeal, defendant raises the following contention:

> THE TRIAL COURT FAILED TO INSTRUCT JURORS TO EVALUATE WITH CAUTION THE ALLEGATIONS THAT DEFENDANT, IN UNRECORDED ORAL REMARKS, (1) CONSPIRED WITH HIS CO-DEFENDANT TO COMMIT BURGLARY, AND (2) HINDERED HIS GIRLFRIEND'S WILLINGNESS TO INCRIMINATE HIM IN A HOMICIDE-ROBBERY INVESTIGATION. (Not Raised Below).

---

[2] Prior to sentencing, defendant pled guilty to one count of third-degree possession with intent to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(3), as charged in a separate Camden County indictment. The judge sentenced defendant to a concurrent four-year term on this charge.

A-0410-17T4

After reviewing the record in light of the contentions advanced on appeal, we affirm.

## I.

At trial, the State's theory of the case was that defendant conspired with Law to rob and kill two people.  According to Law, defendant asked him to accompany defendant to Trenton to burglarize the home of defendant's cousin, Tarik Ali.  Law agreed, and the two men traveled to Trenton by train.  When they arrived at Ali's house, a woman stated that Ali was not at home.  She refused to let defendant and Law inside the house, and defendant then called Ali to arrange to have him meet the men in Burlington that afternoon.

Defendant and Law took the train to Burlington, where they were met by Ali and his friend Tara Ryan, who drove the men back to Camden in her car.  Later that night, a resident found Ali and Ryan dead in Ryan's car on a Camden street.  Both victims had been shot in the head.

Law testified that throughout the day, defendant continued to pester Ali for money that he alleged Ali owed him.  Ali refused to pay.  While Ryan was driving the three men in her car, defendant again demanded that Ali give him money.  When Ali failed to do so, defendant shot him in the head, and then shot Ryan.  Law stated he got out of the car and threw up, while defendant began going

4

through Ali's pockets. Defendant then returned to the car and shot Ryan a second time.

According to Law, he and defendant ran to Law's house where they changed their clothes. Defendant then called his girlfriend, A.C., and asked her to pick him up. A.C., who was celebrating her birthday, did so and drove defendant to her party. A.C. testified that defendant told her at the party that he had killed Ali.

A.C. testified that about a month after the shootings, Camden detectives reached out to talk to her. Before she met with them, she stated that defendant threatened to harm her and her children if she told them what she knew about Ali's murder. A.C. also stated that defendant became physically aggressive with her. A.C. did what defendant asked, and refused to tell the detectives that defendant had confessed his involvement to her. About a year later, the detectives contacted A.C. again and, this time, she told the detectives everything she knew about the incident.

## II.

On appeal, defendant argues that the trial judge erred by failing to give the jury a sua sponte Hampton[3] and Kociolek[4] charge concerning Law's and A.C.'s

---

[3] State v. Hampton, 61 N.J. 250 (1972).

[4] State v. Kociolek, 23 N.J. 400 (1957).

testimony about the oral statements he made to them.   We disagree.

Because defendant is raising this contention for the first time on appeal, he must establish that the error about which he complains rises to the level of plain error, that is, it had the capacity to result in the jury reaching a decision it might otherwise not have made.  R. 2:10-2.  Defendant has failed to meet this standard.

In Hampton, the Supreme Court held that when a defendant's confession is admitted in evidence, the judge shall instruct the jurors "that they should decide whether . . . the defendant's confession is true," and if they conclude that it is "not true, then they must . . . disregard it for purposes of discharging their functions as fact finders."   Hampton, 61 N.J. at 272.   Here, defendant did not give a statement to the police and, therefore, a Hampton charge concerning the statements he made to Law and A.C. was not required.  State v. Baldwin, 296 N.J. Super. 391, 398 (App. Div. 1997) (holding that "a special cautionary instruction is not required when a defendant has allegedly made a voluntary inculpatory statement to a non-police witness without being subjected to any form of physical or psychological pressure").

The trial judge also did not err by failing to give the jury a sua sponte Kociolek charge.  The Kociolek charge pertains to the reliability of an inculpatory statement made by a defendant to any witness.  Kociolek, 23 N.J. at 421-23.  As

explained in Kociolek, the jury should be instructed to "'receive, weigh and consider such evidence with caution,' in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." Id. at 421. However, a Kociolek charge need not be provided to the jury where "an alleged oral inculpatory statement was not made in response to police questioning, and there is no genuine issue regarding its contents, . . . because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement." Baldwin, 296 N.J. Super. at 401-02.

Although our Supreme Court has directed the Kociolek charge to be given whether or not specifically requested by a defendant, it has also determined that the failure to give this charge is not plain error per se. State v. Jordan, 147 N.J. 409, 428 (1997) (noting it would be "a rare case where failure to give a Kociolek charge alone is sufficient to constitute reversible error"). We have held that "[w]here such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." State v. Crumb, 307 N.J. Super. 204, 251 (App. Div. 1997) (finding "no reported case in which a failure to include a Kociolek charge has been regarded as plain error").

A-0410-17T4

Here, defendant did not make the statements in response to police questioning and there was no dispute as to the content of the statements at trial. In addition, defense counsel thoroughly cross-examined both Law and A.C. concerning their allegations,[5] and the trial judge carefully instructed the jurors regarding how to assess the credibility of the witnesses. In addition, the judge gave a prior inconsistent statement instruction to the jury and, in doing so, specifically told the jury to scrutinize Law and A.C.'s testimony in light of the "inconsistencies [that] were shown between the[ir] prior statements and those given on the stand."

Given the trial judge's extensive credibility instructions, we conclude that the issue of the reliability of defendant's statements to Law and A.C. was "thoroughly and sufficiently placed before the jury." State v. Feaster, 156 N.J. 1, 73 (1998). Thus, the judge's failure to give a Kociolek instruction was not plain error. Id. at 72-73 (finding no plain error even though the defendant's incriminating oral statements were "at the heart of the State's case against defendant").

---

[5] During cross-examination, defense counsel was also able to bring out that the county prosecutor gave A.C. approximately $10,000 for relocation assistance, and Law received a favorable sentencing recommendation in return for his cooperation during defendant's prosecution.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

9