**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2062-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAQUAN S. PEACE,

    Defendant-Appellant.

_____

Submitted December 18, 2019 – Decided   April 21, 2020

Before Judges Whipple, Gooden Brown, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-01-0005.

Joseph E. Krakora Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Saquan S. Peace appeals from a November 21, 2017 judgment of conviction after a jury convicted him of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:38-4(a); and fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2). We affirm.

Defendant raises the following issues on appeal.

> POINT I.
> DEFENDANT WAS ENTITLED TO JUDGMENTS OF ACQUITTAL AS THE STATE FAILED TO PROVE ESSENTIAL ELEMENTS OF THE CRIMES.
>
> POINT II.
> THE TRIAL COURT'S JURY INSTRUCTION ON THE DOCTRINE OF FLIGHT WAS PLAINLY ERRONEOUS. (Not Raised Below).

We discern the following facts from the record. In the early hours of October 2, 2016, Officer Jose Perez of the Jersey City Police Department received a report of "shots fired" at Sherman Avenue and Franklin Street. Perez and his partner, Officer Edwin Medina, went to the area where they spoke with a man who identified a white Mazda that had allegedly sped through a stop sign. The officers ordered the Mazda driver to shut off the vehicle and show his hands.

Perez and Medina both approached the Mazda. Perez went toward the passenger's side of the vehicle while Medina went towards the front. Perez,

standing in front of the passenger door with his weapon drawn, said "Stop. Don't move. Stop. Don't move." Perez looked directly at the front passenger of the vehicle, who he later identified as Rhudell Cruz-Snelling. Instead of stopping, the Mazda driver drove away, and the officers gave chase.

Medina radioed identifying information, and Sergeant Crisant Bereguette observed a white vehicle driving the wrong direction down the street. The vehicle then pulled into a driveway where a man exited the vehicle and ran across the street towards the sidewalk. Bereguette used her flashlight to look inside the vehicle and noticed a handgun, later identified as a black semi-automatic Smith & Wesson, on the floorboard of the passenger's side.

Officer Nancy Rojas heard, over dispatch, the description of a male wanted in connection with the shots fired call and saw Cruz-Snelling, matching the description, walking. Rojas stopped Cruz-Snelling for an investigation and noticed dirt marks and grass stains on his pants. Perez and Medina responded to Rojas' location, identified Cruz-Snelling as the man they were looking for, and arrested him.

The police later executed a search warrant for the Mazda and recovered Cruz-Snelling's wallet from the front passenger side of the vehicle, as well as a magazine for a Smith & Wesson handgun, loaded with nine-millimeter

A-2062-17T2

Winchester Luger rounds, from the center console. Detective Joseph Chidichimo had recovered two shell casings from the scene, one from a nine-millimeter Luger and another from a .380 Winchester. He also recovered surveillance video from buildings in the area showing four people walking south on Sherman Avenue away from Franklin Street. A silver revolver was recovered nearby with six spent casings inside its cylinder.

The police arrested the driver, co-defendant Jason Smith, the next day. Smith pled guilty to third-degree eluding, N.J.S.A. 2C:29-2(b), and agreed to testify against his co-defendants after giving a statement. He testified that on October 1, 2016, between 11:00 a.m. and 2:00 p.m., Cruz-Snelling and Smith's sister, Holly Wippert, picked him up in the Mazda and then dropped Wippert off in Manchester. Smith then drove the Mazda, with Cruz-Snelling in the front passenger seat, to Bound Brook where they picked up defendant.

Smith, Cruz-Snelling, and defendant drove to Newark, where they drank alcohol. Then Smith drove to Jersey City with Cruz-Snelling, defendant, and two other individuals to meet "females . . . and then . . . go get another bottle of liquor." Smith eventually parked and waited as the four other occupants of the Mazda left to meet up with the women and "to go get the liquor."

4

After five to ten minutes, the four ran back to the car, got in their original seats, and told Smith to drive off as if they were in a rush. Smith testified that Cruz-Snelling had a black gun in his hand and he believed defendant had a big silver gun in his hand. Smith drove away from the scene with the others in the car as Cruz-Snelling told him where to drive. Eventually, Smith arrived at a stop sign, "a bunch of cops" appeared "out of nowhere," and a police officer, with a gun, directed him to "turn off the car." Smith testified he drove until he crashed the vehicle, then ran.

Defendant was also arrested and gave a video-recorded statement to police acknowledging he was in the Mazda with an individual known to him as "Big Boy," Smith, and someone named Johnny or Ghost. Defendant reported that Big Boy had a black gun in his hand and Johnny had the silver gun. Defendant denied getting out of the car. He stated the shooting occurred on the first time they "spun the block," and that on their third time coming around the police spotted them. He asserted that he told the other passengers he was "not going down for ya'll straps," after which the other passengers threw their guns out the window, and when the car came to a stop, all the occupants jumped out of the car.

A-2062-17T2

Defendant was charged in an indictment with co-defendants Cruz-Snelling and Smith on January 10, 2017, with second-degree unlawful possession of a weapon–handgun, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); third-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1). Defendant and Cruz-Snelling were tried together before a jury.

At the end of the State's case, defendant moved for judgments of acquittal. The court denied the motion after finding the evidence sufficient to warrant a conviction. During jury instructions, the trial judge instructed the jury on the doctrine of flight, with no objections from counsel.

The jury convicted defendant of the weapons charges and resisting arrest. He was sentenced to an aggregate five-year term with forty-two months of parole ineligibility. This appeal followed.

We reject defendant's first argument. We use the same standard as the trial judge in reviewing a motion for judgment of acquittal at the close of the State's case. State v. Bunch, 180 N.J. 534, 548-49 (2004). We must determine

> whether, viewing the State's evidence in its entirety, be
> that evidence direct or circumstantial, and giving the

> State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967).]

Under Rule 3:18-1, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

Defendant argues there is no evidence he fired a gun during the incident or that the recovered shell casings matched the silver gun attributed to him. However, Smith testified that all four passengers had guns, he saw a big silver gun in the back seat near defendant, and he observed defendant return to the car with a gun in his hand after shots had been fired. As for resisting, defendant was in a vehicle that had been ordered to stop. After the vehicle crashed, defendant ran from police along with the others.

We are satisfied the evidence in this case, viewed in its entirety and giving the State all favorable inferences therefrom, was more than sufficient to allow a reasonable jury to find defendant guilty of unlawful possession of a handgun, possession of a handgun for an unlawful purpose, and resisting arrest by flight,

7

beyond a reasonable doubt.

We also reject defendant's argument the judge committed plain error when he charged the jury on flight. Because defendant did not object to the flight charge, we review this contention under the plain error standard of review. R. 2:10-2. "To warrant reversal, the error must be 'clearly capable of producing an unjust result.'" State v. McKinney, 223 N.J. 475, 494 (2015). We must determine whether "[l]egal impropriety in the charge prejudicially affect[ed] the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Torres, 183 N.J. 554, 564 (2005) (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). We must read the charge as a whole to determine whether there was any error. Ibid. (citations omitted). In addition, any finding of plain error depends on an evaluation of the overall strength of the State's case. See State v. Cotto, 182 N.J. 316, 326-27 (2005).

"Flight from the scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017). The circumstances of flight must "'reasonably justify an inference that it was done with a

consciousness of guilt' to avoid apprehension on the charged offense."  Id. at 594-95 (quoting State v. Ingram, 196 N.J. 23, 46 (2008)); see also State v. Latney, 415 N.J. Super. 169, 177-78 (App. Div. 2010) (holding evidence of the defendant's flight was not sufficient to infer that he fled to avoid apprehension for robbery, where the trial court excluded pertinent facts).

Here, the jury could draw reasonable inferences from the evidence that defendant fled the scene to avoid arrest.  His flight occurred after the police told Smith to stop and after Smith crashed the car.  Defendant admitted he ran from police.  The jury could draw a reasonable inference that the circumstances surrounding the flight were intrinsically indicative of a consciousness of guilt of all crimes charged, including possession of a handgun.  The jury charge on flight was warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION