**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3002-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN J. GUTIERREZ, a/k/a
JOHN GUIERREZ,

     Defendant-Appellant.

_____

Submitted September 9, 2019 – Decided December 5, 2019

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-07-0930.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant John J. Gutierrez appeals from the Law Division's judgment of conviction that the trial court entered after a jury acquitted defendant of manslaughter but convicted him of aggravated assault and possession of a controlled dangerous substance (CDS). He also appeals from his aggregate sentence of seven years. At trial, the evidence established the victim died after being beaten by defendant.

On appeal, defendant argues that the trial court should not have admitted into evidence statements he made to police, and for the first time on appeal, he contends that it was plain error for the trial court to not instruct the jury about their consideration of defendant's statements in accordance with the Model Jury Charges. He also contends that he was deprived of a fair trial by the prosecutor's misstatements made during summation. Finally, defendant argues that in imposing its sentence, the trial court improperly rejected all but one mitigating factor. For the reasons that follow, we reject defendant's contentions and affirm.

I.

Defendant's conviction arose from a fight he engaged in with the victim, a friend of his, on October 10, 2015.[1] According to defendant, who testified at

---

[1] Defendant testified that the two had known each other since he was in grammar school, they often used drugs together, and that defendant had entered into a sexual relationship with the mother of the victim's child.

trial, just prior to the beginning of the fight, defendant had been smoking phencyclidine (PCP) with the victim and other friends in defendant's car. During the ensuing altercation that started inside the car, the victim struck defendant in the head, hit him in the face, and took hold of him by his neck, while defendant was defending himself against the victim.[2]

After the fight, a meter attendant observed defendant walking near a car and using a bottle of water in attempt to wash blood off his hands. The meter attendant alerted the police and Officer David Tafer responded to the scene. Upon his arrival, Tafer found defendant in the car with an injury to his eye and a scratch to his face, and another individual who appeared to be unconscious, if not dead, on the floor of the car.

Tafer removed defendant from the vehicle, placed him under arrest, and handcuffed him, before placing him in the back of Tafer's police vehicle. Defendant did not make any statements to Tafer nor did Tafer ask him any questions.

---

[2] Other evidence, including surveillance camera video tapes, defendant's testimony that he did not fear the victim, the victim's blood on the bottom of defendant's shoes, the extent of the injuries to the victim, and the lack of any significant injuries to defendant, indicated that defendant beat the victim during the fight.

3

A police detective, Michelle Aviles, joined Tafer at the scene. Upon her arrival, she observed defendant laying down in the back of the police car. When she checked to see if "he was okay," defendant spontaneously stated that he had gotten into a fight with "Eddie." Aviles, not knowing that "Eddie" was the victim in defendant's car, asked defendant where "Eddie" was located at the time. Defendant responded that he was "in [my] car." Defendant also stated he was "never doing PCP again."

Moments later, an emergency medical technician (EMT) arrived with an ambulance. As the EMT approached, defendant stated the victim "got crazy on PCP." Defendant was then taken to the hospital. He was accompanied in the ambulance by then police officer Ramy Hanna. In the ambulance, Hanna never asked defendant any questions. However, defendant spontaneously asked Hanna where the victim was and stated that the two of them "got too excited . . . [,] got in an argument," and defendant "fucked [the victim] up," after they "smoked too much PCP." In response, Hanna "advised him to hold all his questions for detectives, and [that Hanna did not] have any answers for him, and to only answer the medical questions that was being asked by the EMT."

While defendant was being transported to the hospital, another police officer conducted a search of the vehicle where defendant was found. The

officer observed the victim's lifeless body, took photographs, and helped remove the body. A vile of PCP was also recovered from the vehicle.

Dr. Leah Cronin, the medical examiner, conducted an autopsy of the victim on October 13, 2015. The doctor observed bruises and scrapes on the body, including near the victim's eyes, legs, chest, on his fingers, and neck. She also noted that the victim suffered from coronary heart disease and had suffered a heart attack on an earlier occasion.

The doctor did not reach a conclusion as to the cause of death and only indicated that the determination was pending, although the doctor advised a detective that she did not believe the victim's death was caused by the bruises and abrasions she found on his body. In order to help reach a conclusion as to the cause of death, Cronin requested a consult with a neuropathologist as to the condition of the victim's brain.

A neuropathologist, Dr. Leroy Sharer, conducted an examination of the victim's brain that revealed hemorrhaging. Sharer concluded there was only a mild injury to the brain that occurred less than twenty-four hours before the victim expired, but that it was neither significant nor the cause of death.

A-3002-17T1

Toxicology testing of the victim revealed that the PCP level in his blood exceeded the toxic range but had not reached a fatal level. There was also evidence that the victim had taken medication used to treat seizures.

After reviewing these additional reports, Cronin concluded that the victim's death was a homicide and the cause of death was a blunt impact to the head. She would not opine as to what type of blunt force occurred or the time of the victim's death. Cronin also identified PCP intoxication, hypertension, and heart disease as contributory factors. According to the doctor, the victim's use of PCP could have caused the victim's heart, which she found to be enlarged, to "work harder" than normal. She further explained that the victim's hypertension had impacted his kidneys and his earlier heart attack made him prone to ventricular fibrillation, but that could not be detected by the autopsy.

In 2016, a grand jury returned an indictment charging defendant with second-degree manslaughter, N.J.S.A. 2C:ll-4(b)(1) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-l(b)(1) (count two); and with third-degree possession of CDS (PCP), N.J.S.A. 2C:35-l0(a)(1) (count three). Prior to defendant's trial, the State filed motions to admit statements made by defendant. After conducting hearings, on July 31, 2017, the trial court granted in part and denied in part one motion, and on September 28, 2017, it granted the other.

6

The trial took place over nine days in October 2017. At its conclusion, the jury acquitted defendant of manslaughter, but convicted him of aggravated assault and possession of CDS. At sentencing, the trial court imposed the aggregate seven-year term, subject to a parole ineligibility period under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant asserts the following contentions:

> POINT I
>
> THE CUSTODIAL STATEMENTS MADE BY DEFENDANT TO POLICE WERE IN VIOLATION OF HIS RIGHT AGAINST SELF-INCRIMINATION AND SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.
>
> POINT II
>
> THE FAILURE OF THE TRIAL COURT TO GIVE HAMPTON AND KOCIOLEK[3] JURY INSTRUCTIONS WAS PLAIN ERROR. (NOT RAISED BELOW).
>
> POINT III
>
> MISSTATEMENTS OF FACT AND LAW BY THE PROSECUTOR DURING HIS SUMMATION WERE UNDULY PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR TRIAL. (NOT RAISED BELOW).

---

[3] State v. Hampton, 61 N.J. 250 (1972); State v Kociolek, 23 N.J. 400 (1957).

<u>POINT IV</u>

BECAUSE THE SENTENCING COURT ERRONEOUSLY REJECTED CERTAIN MITIGATING FACTORS IN IMPOSING A NERA SENTENCE OF SEVEN (7) YEARS, DEFENDANT'S SENTENCE MUST BE MODIFIED AND REDUCED.

We are not persuaded by any of these arguments.

## II.

Defendant's first argument relates to the trial court's admission of the statements defendant made to police prior to his arrival at the hospital and before he received any <u>Miranda</u>[4] warnings. After conducting an evidentiary hearing under <u>Rule</u> 104, the trial court found the statements were made while defendant was in police custody, but it concluded they were not made in response to any police interrogation and were therefore admissible. Specifically, as to Aviles's question about where "Eddie" was, the trial court concluded that the officer could not have anticipated defendant's identification of "Eddie" as the victim lying in his car when she asked her question.

Defendant argues that Aviles questioning defendant about the victim's location, her and Hanna's knowledge that defendant was under the influence of

---

[4]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

PCP, which impaired his mental and physical condition, and that defendant was injured, warranted the suppression of the statements. We disagree.

Our review of a trial court's grant or denial of a motion to suppress a defendant's statement is deferential. State v. Vincenty, 237 N.J. 122, 131-32 (2019). If a trial court's findings are supported by sufficient, credible evidence present in the record, our "task is complete and [we] should not disturb the result." State v. Johnson, 42 N.J. 146, 162 (1964). In contrast, we review de novo a trial court's legal conclusions. State v. Hubbard, 222 N.J. 249, 263 (2015).

It is beyond cavil that Miranda warnings are designed to protect an individual's Fifth Amendment right to remain silent when confronted with a criminal charge and exposure to police interrogation. "Miranda safeguards come into play whenever someone is subject either to express questioning 'or its functional equivalent.'" State ex rel. A.A., 455 N.J. Super. 492, 503 (App. Div. 2018) (quoting State v. Brown, 282 N.J. Super. 538, 549 (App. Div. 1995)).

However, "Miranda has no application to statements that are 'volunteered.'" State v. Brabham, 413 N.J. Super. 196, 210 (App. Div. 2010) (quoting Miranda, 384 U.S. at 478). "Interrogation triggering the State's obligation to deliver Miranda warnings requires 'words or actions on the part of

the police that they should have known were reasonably likely to elicit an incriminating response.'" Id. at 210-11 (quoting Rhode Island v. Innis, 446 U.S. 291, 303 (1980)).

In this case, we conclude that the trial court correctly determined that defendant's statements were not the result of police interrogation as there was no action taken by law enforcement that elicited an incriminating response from defendant. When Aviles asked the only question put to defendant about where "Eddie" was located, Aviles had no knowledge that "Eddie" was the victim. Aviles asked the question when defendant spontaneously stated he had been in a fight with "Eddie." The other statements admitted were purely spontaneous and unrelated to police interrogation. We therefore discern no abuse in the trial court's discretion by admitting defendant's statements.

## III.

We next consider defendant's challenge to the trial court's jury instructions. According to defendant, even though he did not raise any issue as to the jury instructions before the trial court, it was plain error for the court to have not charged the jury with the statements made by defendant "as required by N.J.R.E. 104(c) and State v. Hampton and State v Kociolek." According to defendant, his conviction should be reversed because "[t]he court failed to

10

advise the jury that they must consider and weigh such evidence with caution, weigh whether it was in fact said and if it was reported accurately." We disagree.

Where, as here, a defendant raises a challenge to the trial court's jury instructions for the first time on appeal, he must establish that the error about which he complains rises to the level of plain error. Plain error is established when the error, if any, had the capacity to result in the jury reaching a decision it might otherwise not have made. R. 2:10-2; see also State v. Funderburg, 225 N.J. 66, 79 (2016).

As applied to jury instructions, plain error is an error that "prejudicially affect[s]" a defendant's substantial rights in a "sufficiently grievous" manner, which has the "clear capacity to bring about an unjust result." State v. Afanador, 151 N.J. 41, 54 (1997) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also Funderburg, 225 N.J. at 79. "The mere possibility of an unjust result is not enough. To warrant reversal . . . an error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Funderburg, 225 N.J. at 79 (second alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

To be sure, "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (quoting State

v. Reddish, 181 N.J. 553, 613 (2004)). A "court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Id. at 159 (alteration in original) (quoting Reddish, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)); see also State v. Singleton, 211 N.J. 157, 182-83 (2012).

The omitted instruction, which is commonly known as a Hampton-Kociolek charge, advises the jury its "function [is] to determine whether or not [any written or oral] statement was actually made by the defendant, and if made, whether the statement or any portion of it is credible." Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010). "[W]henever a defendant's oral or written statements . . . are introduced," trial courts are mandated to give the instruction whether requested by defendant or not. Jordan, 147 N.J. at 425.

Hampton addressed statements made in response to police questioning, while Kociolek related to statements to lay witnesses. In Hampton, the Supreme Court held that when a defendant's confession is admitted in evidence, the judge

shall instruct the jurors "that they should decide whether . . . the defendant's confession is true," and if they conclude "that it is not true, then they must . . . disregard it for purposes of discharging their functions as fact finders." Hampton, 61 N.J. at 272. "The failure of a court to give a Hampton charge, however, is not reversible error per se." Jordan, 147 N.J. at 425.

> It is reversible error only when, in the context of the entire case, the omission is "clearly capable of producing an unjust result. . . ." R. 2:10-2. That problem would arise most frequently when the defendant's statement is critical to the State's case and when the defendant has challenged the statement's credibility. If, however, the defendant's statement is unnecessary to prove defendant's guilt because there is other evidence that clearly establishes guilt, or if the defendant has acknowledged the truth of his statement, the failure to give a Hampton charge would not be reversible error.
>
> [Id. at 425-26 (first alteration in original) (emphasis added).]

The Kociolek charge pertains to the reliability of an inculpatory statement made by a defendant to any witness. See Kociolek, 23 N.J. at 421-23. As explained in Kociolek, the jury should be instructed to "'receive, weigh and consider such evidence with caution,' in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." Id. at 421. However, similar to a Hampton

13

charge, a <u>Kociolek</u> charge need not be provided to the jury where "an alleged oral inculpatory statement was not made in response to police questioning, and <u>there is no genuine issue regarding its contents</u>, . . . because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement." <u>State v. Baldwin</u>, 296 N.J. Super. 391, 401-02 (App. Div. 1997) (emphasis added).

The failure to give a <u>Kociolek</u> charge also is not plain error per se. <u>Jordan</u>, 147 N.J. at 428 (noting it would be "a rare case where failure to give a <u>Kociolek</u> charge alone is sufficient to constitute reversible error"). We have held that "[w]here such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." <u>State v. Crumb</u>, 307 N.J. Super. 204, 251 (App. Div. 1997) (finding "no reported case in which a failure to include a <u>Kociolek</u> charge has been regarded as plain error"); <u>Baldwin</u>, 296 N.J. Super. at 398 (holding that "a special cautionary instruction is not required when a defendant has allegedly made a voluntary inculpatory statement to a non-police witness without being subjected to any form of physical or psychological pressure").

Here, defendant did not give a confession in response to police questioning, therefore, a Hampton charge concerning the statements he made in the presence of Aviles or Hanna was not required. Moreover, defendant's testimony at trial established there was no dispute as to the veracity of the statements he claims warranted the specific jury instructions. At trial, defendant did not dispute that he was in a fight with the victim and caused him injuries. Rather, defendant testified that he acted in self-defense, and that the two of them used PCP prior to the fight. Therefore, since "defendant's statement [was] unnecessary to prove [his] guilt because . . . defendant has acknowledged the truth of his statement, the failure to give a Hampton charge [is] not . . . reversible error." Jordan, 147 N.J. at 425-26.

Under these circumstances and given the trial court's instruction as to the jury's determination of the credibility of all witnesses, we conclude defendant has failed to establish any error, let alone plain error, in the court not instructing the jury about his statements. See State v. Setzer, 268 N.J. Super. 553, 563-65 (App. Div. 1993) (holding the omission of a Hampton charge was not clearly capable of producing an unjust result when a general credibility charge was given); see also Jordan, 147 N.J. at 429.

## IV.

We turn our attention to defendant's contention that it was plain error for the trial court to allow certain comments that were made by the prosecutor during summation. According to defendant, those statements contained "misstatements of fact and law, were grossly prejudicial and deprived . . . defendant of a fair trial." In support of his contention, defendant specifically cites to the following comments made by the prosecutor during his summation:

> [I]t's been suggested to you throughout this case and in summation that [defendant] is somehow not responsible for what happened here because [the victim] was a sick guy, because he wasn't the picture of health, because [he] had a bad heart, he used drugs, he was a little overweight, his liver wasn't that good. As if that somehow was an excuse. As if he [was] not entitled to any less protection because of these reasons.
>
> [The defense s]uggested . . . some mysterious, unknown cause of death.
>
> We have a decedent in this case. I think that speaks plainly. You've heard about the injures [the victim] sustained. I think that . . . speaks plainly . . . to the use of deadly force.
>
> How he admitted that it wasn't a fight. It was a beat down. That was his testimony.

Defendant argues that he did not admit to there having been a "beat down," as he clearly testified that he had been attacked and was defending himself

against the victim's aggression. Moreover, he challenges the prosecutor's comments about defendant trying to "excuse" his behavior through the dispute over the victim's cause of death. Defendant contends that the prosecutor's comment was to "engender[] sympathy" from the jury. In addition, he argues because there was no evidence of any weapon being used, the prosecutor's reference to deadly force was not appropriate. We conclude these contentions are without merit.

Prosecutors are "expected to make vigorous and forceful" summations, and they "are afforded considerable leeway" so long as their remarks are tethered to the evidence presented and the reasonable inferences to be drawn therefrom. State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)); (State v. Williams, 113 N.J. 393, 447 (1988)). For that reason, prosecutors are afforded "wide latitude" during summation. State v. R.B., 183 N.J. 308, 330 (2005) (quoting State v. Mayberry, 52 N.J. 413, 437 (1968)). However, prosecutors generally "must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." See State v. Smith, 167 N.J. 158, 178 (2001) (first citing Frost, 158 N.J. at 86; then citing State v. Marks, 201 N.J. Super. 514, 534 (App. Div. 1985)). Nevertheless, where a prosecutor's comment was a fair response to

17                                                                    A-3002-17T1

defense counsel's summation, we will reject a defendant's argument that the comment was improper. State v. Smith, 212 N.J. 365, 404 (2012); State v. Williams, 317 N.J. Super. 149, 158 (1998).

In evaluating a claim of prosecutorial misconduct, there are two issues to be addressed: (1) whether the prosecutor's comments amounted to misconduct and, if so, (2) whether the prosecutor's conduct justifies a new trial. State v. Wakefield, 190 N.J. 397, 446 (2007) (citing Smith, 167 N.J. at 181). Reversal of defendant's conviction is not justified unless the prosecutor's comments were "so egregious that [they] deprived defendant of a fair trial." Ibid. (quoting Smith, 167 N.J. at 181).

"Generally, if no objection was made to the [prosecutor's] remarks," the remarks "will not be deemed prejudicial." State v. Kane, 449 N.J. Super. 119, 141 (App. Div. 2017) (quoting Frost, 158 N.J. at 83). "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made." Frost, 158 N.J. at 84. "The failure to object also deprives the court of an opportunity to take curative action." Ibid. (citing State v. Bauman, 298 N.J. Super. 176, 207 (App. Div. 1997)).

Applying these guiding principles here, we discern no plain error and conclude that defendant's contentions to the contrary are without sufficient merit

to warrant discussion in a written opinion.  R. 2:11-3(e)(2).  Suffice it to say, the challenged statements were based upon defendant's testimony and made in response to defendant's summation that focused on the dispute over the victim's cause of death.  In light of the jury's acquittal of defendant on the manslaughter charge, defendant was not deprived of a fair trial based upon the prosecutor's remarks.

V.

Last, we address defendant's challenge to his sentence.  At his sentencing, the trial court considered the parties' written and oral submissions regarding the applicability of the statutory aggravating and mitigating charges, N.J.S.A. 2C:44-1(a) and (b), as well as defendant's request to be sentenced in the third-degree range for his second-degree conviction of aggravated assault.  See N.J.S.A. 2C:44-1(f)(2); State v. Megargel, 143 N.J. 484, 487 (1996).

In a comprehensive oral decision, the trial court rejected defendant's request for sentencing in a lower range, after concluding that the only aggravating factor it found, number nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"), outweighed the only mitigating factor it found, number seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a

19

law-abiding life for a substantial period of time before the commission of the present offense").  In doing so, the trial court analyzed each aggravating factor advanced by the State and each mitigating factor argued for by defendant before concluding that only the two factors applied.[5]  The court then considered the factors under State v. Yarbough, 100 N.J. 627, 643-44 (1985), placed its reasons on the record, and imposed the seven-year term subject to a parole ineligibility period under NERA on the aggravated assault conviction, and a concurrent, rather than consecutive, three-year term for the CDS possession.

---

[5]  The State also argued for application of aggravating factors two, N.J.S.A. 2C:44-1(a)(2) ("[t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance . . . ."); and six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted").

Defendant also argued for mitigating factor two, N.J.S.A. 2C:44-1(b)(2) ("[t]he defendant did not contemplate that his conduct would cause or threaten serious harm"); three, N.J.S.A. 2C:44-1(b)(3) ("[t]he defendant acted under a strong provocation"); four, N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"); five, N.J.S.A. 2C:44-1(b)(5) ("[t]he victim of the defendant's conduct induced or facilitated its commission"); eight, N.J.S.A. 2C:44-1(b)(8) ("[t]he defendant's conduct was the result of circumstances unlikely to recur"); nine, N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense"); and, ten, N.J.S.A. 2C:44-1(b)(10) ("[t]he defendant is particularly likely to respond affirmatively to probationary treatment").

20

On appeal, defendant contends that the trial court improperly rejected the other mitigating factors he argued were applicable to the circumstances. This was based primarily upon defendant's testimony that the victim started the altercation, defendant had no prior indictable convictions, defendant was in need of drug treatment, and was remorseful. He argues "[h]ad the sentencing court correctly evaluated the relevant mitigating factors, [they] would have outweighed the sole aggravating factor of deterrence." We again disagree with defendant's contentions.

We review a sentence imposed by the trial court under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Applying that standard, we conclude defendant's challenge to his sentence is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons the trial court expressed at

sentencing in its thorough oral decision. We are satisfied that the court did not violate the sentencing guidelines, and the record amply supports its findings on aggravating and mitigating factors. The sentence is clearly reasonable and does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3002-17T1