# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0089-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

C.M.,

     Defendant-Appellant.

_____

Argued February 10, 2021 – Decided April 14, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-03-0252.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the brief).

Kerry Salkin, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Kerry Salkin, of counsel and on the brief).

PER CURIAM

Defendant C.M.[1] appeals his convictions following a jury trial for two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and two counts of the lesser-included offense of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). He also appeals his aggregate seven-year sentence subject to an eighty-five percent parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant argues:

POINT I

THE TRIAL COURT ERRED IN ADMITTING THE VIDEOTAPED STATEMENT OF THE FIVE-YEAR-OLD COMPLAINANT UNDER THE TENDER YEARS EXCEPTION TO THE HEARSAY RULE BECAUSE THE INTERVIEWER FAILED TO EXTRACT A PROMISE FROM COMPLAINANT TO TELL THE TRUTH OR OTHERWISE DISCUSS TRUTH AND LIES WITH COMPLAINANT. U.S. CONST. AMEND. VI, XIV; N.J. CONST. ART. I, PARA. 1, 10.

POINT II

IN A CASE THAT TURNED ON THE OPPOSING OUT-OF-COURT STATEMENTS OF COMPLAINANT AND DEFENDANT, THE TRIAL

---

[1] We use initials and pseudonyms to protect the privacy of the victim and preserve the confidentiality of these proceedings. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

A-0089-18

COURT COMMITTED PLAIN ERROR IN EFFECTIVELY INSTRUCTING THE JURORS TO VIEW DEFENDANT'S – BUT NOT COMPLAINANT'S – OUT-OF-COURT STATEMENTS WITH SKEPTICISM. U.S. CONST., AMEND. XIV; N.J. CONST. ART. I, PARA. 1. (NOT RAISED BELOW).

POINT III

A RESENTENCING SHOULD OCCUR BECAUSE THE COURT MADE CONFLICTING FINDINGS ON THE AGGRAVATING AND MITIGATING FACTORS, FINDING THAT THE DEFENDANT WAS UNLIKELY TO REOFFEND, BUT ALSO FINDING A RISK OF REOFFENDING AND A NEED FOR DETERRENCE.

We affirm because we conclude: (1) the trial judge did not abuse his discretion in admitting the victim's videotaped statement under the tender years hearsay exception, N.J.R.E. 803(c)(27); (2) there was no plain error in the judge's failure to give the Hampton/Kociolek[2] jury charge regarding the victim's out-of-court statements; and (3) defendant has not shown that the judge erred in considering the sentencing factors.

I

---

[2] State v. Hampton, 61 N.J. 250 (1972); State v. Kociolek, 23 N.J. 400 (1957).

A-0089-18

C.K. (Cindy) was five years old on March 27, 2012, when she told her mother L.K. (Lillie) that defendant, her first cousin, sexually assaulted her while he was babysitting her. Lillie reported the allegations to the Division of Youth and Family Services.[3]

The next day, Cindy gave a videotaped statement to Passaic County Prosecutor's Office Detective Sergeant Marshall Wang. She told Wang that defendant "touched [her] in the front of [her] private." After Wang used an anatomical drawing, she explained that defendant put "his weenie" in her "butt" and placed it into her vagina. She described how she was on her bed, playing with her pony dolls, when defendant "putted [her] down on [her] bed, then he started doing that." She said that this happened "a lot of times." She also recounted an incident "[w]hen we had ants in our house, he did it again."

One day after Wang interviewed Cindy, Dr. Nina Agrawal, a child abuse pediatrician, conducted a child abuse evaluation on Cindy. Cindy told Dr. Agrawal that "my cousin touched her butt with his front butt." Cindy said it felt "gross" but denied anyone touched her "front private."

Michael Heresi, who was an uncertified teacher at Cindy's daycare, revealed that on or about March 26, 2012, he overheard Cindy tell a male

---

[3] Currently known as the Division of Child Protection and Permanency.

A-0089-18

classmate that defendant "chased her into a room and pulled her pants down" and he then "stopped [the] conversation, and . . . pulled her aside [to] . . . have her finish the conversation with me." She then told Heresi, "[h]e pulled my pants down and pulled his pee pee out through his zipper and rubbed it against my thing." (1T8:12; 8:24 to 9:4; 12:2-4; 12:23 to 13:14; 9:19 to 10:4).

In addition, Cindy made two subsequent non-recorded statements to Wang and others on July 31, 2014 and December 23, 2014. She essentially reiterated what she stated in her videotaped statement.

On March 24, 2016, a Passaic County Grand Jury indicted defendant for three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1).

On June 30 and July 12, 2016, Judge Sohail Mohammed conducted a Rule 104 hearing regarding the State's motion to admit Cindy's out-of-court statements under N.J.R.E. 803(c)(27). The judge viewed Cindy's videotaped statement and heard testimony from Lillie, Heresi, and Wang. After reserving decision, the judge issued an order and written decision on October 13, 2016, admitting Cindy's videotaped statement to Wang as well as her statements to her

A-0089-18

mother and Heresi under the tender years exception on the condition that Cindy testify at trial. The judge, however, denied the State's request to admit two non-recorded statements by Cindy to Wang because they "lack[ed] the probability of trustworthiness[.]"

Following a seven-day trial ending on December 21, 2017, the jury found defendant guilty of two counts of second-degree sexual assault and two counts of the lesser-included offense of third-degree endangering the welfare of a child. On July 26, 2018, after merger, defendant was sentenced to concurrent seven-year prison terms subject to NERA on the two counts of second-degree sexual assault.

II

Defendant's first argument contends the trial judge erred in admitting Cindy's videotaped statement under the tender years hearsay exception.[4] The judge did not abuse his discretion in admitting the statement. See State v. Cole, 229 N.J. 430, 449 (2017).

Hearsay is "a statement that the declarant does not make while testifying . . . offer[ed] in evidence to prove the truth of the matter asserted in the

_____

[4] Defendant does not challenge the admission of Cindy's statements to her mother and Heresi.

statement[,]" N.J.R.E. 801(c), and is inadmissible unless the rules provide an exception, N.J.R.E. 802. Commonly referred to as the "tender years" exception, N.J.R.E. 803(c)(27) allows the admission of a statement made by a child under the age of twelve "relating to sexual misconduct" on a finding of three conditions. The first is the requirement that the proponent give notice of an intention to use the statement, N.J.R.E. 803(c)(27)(a), which was satisfied here. The second requires that the judge conduct a hearing, pursuant to N.J.R.E. 104(a) — as occurred here — and, before admitting such a statement, determines there is a "probability that the statement is trustworthy" "on the basis of the [statement's] time, content and circumstances[.]" N.J.R.E. 803(c)(27)(b). The third requires, which also occurred here, that the child testify. N.J.R.E. 803(c)(27)(c).

Defendant's focus on appeal is on the second condition: whether the judge properly concluded that the statements were trustworthy. He maintains Cindy's videotaped statement should not have been admitted because Wang did not have a truth-lie discussion with her to confirm that she understood what it meant to tell the truth and have her promise to tell him the truth. Defendant argues that "because the admission of [Cindy's] detailed video statement in this he-said-she-said case was obviously harmful, a new trial should occur." We disagree.

A-0089-18

Judge Mohammed's decision thoroughly followed the guidelines established by the United States Supreme Court in Idaho v. Wright, 497 U.S. 805, 821-22, (1990), in describing the relevant non-exclusive factors as "spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate[]" to determine the trustworthiness of Cindy's videotaped statement. State v. P.S., 202 N.J. 232, 249 (2010); see also State in Interest of A.R., 234 N.J. 82, 103 (2018). Noting that Wang "follow[ed] the protocol set forth by his office to ensure investigatory independence[,]" the judge detailed how Cindy consistently answered Wang's mostly open-ended questions in a conversational manner, "provid[ing] a detailed and animated rendition of the incidents."[5] The judge acknowledged that Wang asked some leading questions, but they were appropriate given Cindy's age "and the rapport [he] needed to establish with [her], and they "did not prompt [her]" to make statements that were not

---

[5] At the time of Wang's interview of Cindy, the Finding Words protocol used by his office did not include having a truth-lie discussion with the child victim That protocol included: (1) Rapport; (2) Anatomy Identification, in which the interviewer shows the child diagrams so that they can identify anatomy and label it; (3) Touch Inquiry, in which questions about desired and undesired touch are discussed; (4) Abuse, or what happened in the abuse scenario, using anatomical dolls as necessary; and (5) Conclusion, where the interviewer tells the child whom they can tell if they are hurt or made to feel uncomfortable.

8

credible." In sum, substantially for the cogent reasons set forth in Judge Mohammed's written decision, we defer to his determination that Cindy's videotaped statement was "sufficiently trustworthy" and "admissible, provided [she] testif[y] at trial."

## III

Defendant next argues the trial judge committed plain error in not giving the Hampton/Kociolek charge to the jury to assess the credibility of the prior out-of-court statements Cindy allegedly made accusing defendant of sexual abuse. Defendant highlights the following testimony by Lillie:

> [Lillie:] . . . [Cindy] told me that [defendant] did things to her. And I said what things does he do? And, um, I'm sorry, this is not easy to say. So, at that point, he – she said that he – they were in her room, and she had been playing with her my little ponies, which I did find that next morning, and that he – they were on her bed, and that he had taken off her, her, her pants and her underwear and that he had rubbed his, she called it a front butt, pointed down to her, her front, and that he had rubbed that between her butt.
>
> [Prosecutor:] Did you ask her what she meant by a front butt?
>
> [Lillie:] I did. I said, well, what does that look like? And she said a hotdog.
>
> [Prosecutor:] And how did you – what did you do next?

9

A-0089-18

[Lillie:] Then, you know, I asked her that they were on the bed and that he had, he was rubbing his front butt against her butt and she motioned like the motion of two people having sex. And that her back was to him when he was rubbing himself against her with his front butt or penis.

[Prosecutor:] Did she give you any other detail?

[Lillie:] Just that he had done things to her before and that she wanted it to stop and she didn't want him to babysit her anymore.

[Prosecutor:] Did she say when it happened before?

[Lillie:] She said, mom, remember the ants that when he had [sic] and when he babysat.

Defendant also argues the Hampton/Kociolek charge applies to Cindy's statements accusing defendant of sexual assault to her mother at bedtime the day after she was assaulted and after a family meeting, as well as to Dr. Agrawal and to Heresi.

Because defendant did not request a Hampton/Kociolek charge or otherwise object to the jury charge pursuant to Rule 1:7-2, we consider his contention for plain error. Under this standard, any error or omission by the judge is disregarded "unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2; see also State v. Hock, 54 N.J. 526, 538 (1969) (noting the "legal impropriety in the charge" must be "sufficiently

10

grievous . . . to convince the [reviewing] court that of itself the error possessed a clear capacity to bring about an unjust result.").

The Hampton/Kociolek charge does not apply to Cindy's statements accusing defendant of sexual assault. A trial judge should provide a Kociolek charge whenever a witness at trial testifies regarding oral statements made by a defendant. Kociolek, 23 N.J. at 421. In such cases, the judge should provide the jury with an instruction that it "should receive, weigh and consider such evidence with caution, in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." Ibid. (internal quotation marks omitted). "[T]he Kociolek charge should be given whether requested or not." State v. Jordan, 147 N.J. 409, 428 (1997). "The principal value of the Kociolek charge is to cast a skeptical eye on the sources of inculpatory statements attributed to a defendant[,]" and opposing counsel's "devastating cross-examination . . . accomplished that end." State v. Harris, 156 N.J. 122, 183 (1998).

A trial judge should provide a Hampton charge "whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence[,]" regardless of whether the charge is requested. Jordan, 147 N.J. at 425. A jury "shall be instructed that they should decide whether . . . the

defendant's [statement] is true[,]" and if they conclude that it is ". . . not true, then they must . . . disregard [it] for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." Hampton, 61 N.J. at 272. "The very purpose of a Hampton charge is to call the jury's attention to the possible unreliability of the alleged statements made by a criminal defendant." State v. Feaster, 156 N.J. 1, 72 (1998).

The judge gave appropriate charges guiding the jury's evaluation of Cindy's statements to her mother, Wang, Heresi, and Dr. Agrawal by giving the detailed instructions on assessing the general credibility of witnesses set forth in Model Jury Charges (Criminal), "Criminal Final Charge" (rev. May 12, 2014). The Hampton/Kociolek charge was properly limited to defendant's statements denying Cindy's allegations. Defendant cites no caselaw indicating that the charge should be given to a jury to evaluate out-of-court statements by a crime victim accusing a defendant. His argument – based on the assertion that Cindy's statements should have been treated with "skepticism" because they were made by a child some five years before trial – does not invoke the principles underlying the Hampton/Kociolek charge to protect inculpatory statements made by a defendant. Accordingly, we conclude the court's failure to provide a Hampton/Kociolek charge does not require reversal.

A-0089-18

IV

Defendant lastly argues that resentencing is required because the trial judge misapplied two aggravating sentencing factors in imposing his aggregate seven-year sentence subject to NERA. The judge applied aggravating factor three, a risk to reoffend, N.J.S.A. 2C:44-1(a)(3), and aggravating factor nine, need to deter, N.J.S.A. 2C:44-1(a)(9). Defendant maintains these aggravating factors conflicted with the judge's application of low to medium weight to mitigating factors seven, no prior criminal record, N.J.S.A. 2C:44-1(b)(7), and nine, unlikely to reoffend N.J.S.A. 2C:44-1(b)(9).

A sentencing judge's finding of aggravating factor nine is not "inappropriate in a case in which the defendant had no prior record, and the sentencing court accordingly applies mitigating factor seven[.]" State v. Fuentes, 217 N.J. 57, 80 (2014). Such was the situation here. Similarly, a judge can find aggravating factor three and mitigating factor seven, which seem irreconcilable in theory, if there is "a reasoned explanation for [the] conclusion that this first-time offender presented a risk to commit another offense." State v. Case, 220 N.J. 49, 67 (2014). The judge did so in this case.

In applying aggravating factor three, the judge observed that the two sexual assaults occurred within a year of each other making it a "low risk" that defendant would reoffend.  As to aggravating factor nine, the judge believed there was a specific need to deter defendant given he committed two separate sexual assaults, as well as a general need to deter others.  The judge's consideration of mitigating factor nine was based upon the "fifteen letters" he received attesting to defendant's support system along with the numerous caring family members who appeared at sentencing.

Judge Mohammed did not abuse his discretion in sentencing defendant. His weighing of the aggravating and mitigating factors challenged by defendant was based upon competent and credible evidence in the record, and the sentence does not shock our judicial conscience.  See State v. Bolvito, 217 N.J. 221, 228 (2014).

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0089-18