**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0862-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT CARDELL, a/k/a
ROBERT J. CARDELL,

    Defendant-Appellant.

_____

Submitted January 13, 2021 – Decided April 27, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-07-1067.

Joseph E. Krakora, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Tried by a jury, defendant Robert J. Cardell was convicted of eight counts of fourth-degree unregistered home improvement contracting, N.J.S.A. 56:8-138(a) (counts one, three, five, seven, fifteen, nineteen, twenty-two, and twenty-six), and eight counts of third-degree theft by deception, N.J.S.A. 2C:20-4 (counts two, four, six, eight, sixteen, twenty, twenty-three, and twenty-seven).[1] Defendant was also charged in count twenty-eight with third-degree failure to file a tax return, N.J.S.A. 54:52-8, and in count twenty-nine with third-degree failure to pay taxes, N.J.S.A. 54:52-9(a). The latter two charges were severed before trial and resolved by plea agreement. Count twenty-eight was dismissed, and defendant entered a guilty plea to count twenty-nine.

On August 31, 2018,[2] defendant was sentenced on the State's motion to an extended term on count eight to nine years, subject to four years of parole ineligibility. See N.J.S.A. 2C:44-3(a). On count twenty-nine, defendant was sentenced to five years imprisonment concurrent to the other offenses. On the remaining charges, the judge sentenced defendant to concurrent eighteen months

---

[1] An additional eleven counts involving six other victims were dismissed pre-trial by the State.

[2] Defendant was sentenced on that date to concurrent and consecutive terms on unrelated indictments as well.

on all fourth-degree offenses, and concurrent five years on all third-degree crimes. We affirm.

The charges arose from defendant's solicitation of eight victims between September 2016, and May 2017. Going door-to-door, he presented himself as a home improvements contractor who also performed roof repairs, replaced siding, and repaired gutters and driveways. He was not registered with the Division of Consumer Affairs. Defendant showed some of the victims documents purporting to be proof of insurance. He gave his company name as "Silverlining," based at a Salem address.

Three of the victims resided in adult communities. Defendant obtained deposits, in the form of cash and checks, totaling $12,073 from the victims. In all but two cases, where he performed minimal preliminary tasks, he did not provide the agreed-upon services. Despite promising several victims a refund, defendant only partially refunded one victim. He told two victims that he could not provide a refund because his daughter's baby had been hospitalized after a car crash. In fact, he actually borrowed an additional $400 from one of the victims for that reason.

The legal issues do not require the names of the victims or a more specific description as to each of their interactions with defendant. Suffice it to say that

A-0862-18

defendant took money from each in varying amounts and did not perform the promised services, oftentimes never reappearing at all.

The State called five witnesses in its case-in-chief, in addition to the eight victims, including defendant's daughter. The daughter testified that she was defendant's only child, that she had never been in a serious motor vehicle accident, and that her seven-year-old daughter—her only child—had never been injured in a car crash. The Deputy Director of the Ocean County Department of Consumer Affairs verified defendant was not registered as a home improvement contractor. The owner of a company called Silverlining Contracting, located in Union County, testified he had never seen defendant before the trial, had never had any contact with him, and had never given him permission to use the company name. A representative from Farmers Insurance said that in August 2016, defendant opened an account for workers compensation under the name of Robert Cardell, doing business as Silverlining Seal Coat. The policy was cancelled for nonpayment on November 4, 2016. To the agent's knowledge, defendant did not have a general liability insurance policy.

Defendant presented three witnesses in support of the theory that he had no intent to steal, but only an innocent inability to manage either the cash he received or the completion of jobs. These witnesses were customers during the

4

relevant timeframe. The first testified that he hired defendant in April 2017, to paint stripes in his business parking lot. Defendant was late in commencing the job, although he did complete it and was fully paid. A homeowner testified she gave defendant an initial $300 deposit to complete gutter work. The job was actually performed by another contractor, who returned to the homeowner complaining he was not paid by defendant after the job was finished.

A second homeowner hired defendant to complete roof repairs in October 2016, and paid defendant a total of $3900. The work was performed by another builder, who stated that he got the job by answering defendant's Craigslist ad. He had been promised $450 in payment. The builder testified that when he saw the job, he told defendant he needed to be paid more for it, and defendant promised him an additional sum, which he did not pay.

The judge refused to allow defendant to call some thirteen additional witnesses who would have allegedly testified that, despite experiencing similar difficulties as the victims in these cases, defendant eventually completed their jobs. The timeframe for these witnesses was May 2015, to August 2016.

The judge reasoned only witnesses from the relevant timeframe could refute the State's proof of intent to defraud. As she said, "in the universe of theft

A-0862-18

cases because I went to a store on [twenty] occasions and didn't steal isn't relevant to the fact on the [twenty-first] I did go and take something."

Also pre-trial, the judge denied defendant's motion to sever the charges by individual victim but granted the application to sever as to the tax fraud. She decided the motion based on her analysis of Rule 404(b), more specifically outlined in the relevant section of this opinion.

The judge was not requested to provide, nor did she give, an instruction informing the jury that other crimes evidence should not be used to establish propensity. The judge did administer the standard model jury charge for multiple offenses. Model Jury Charges (Criminal), "Criminal Final Charge, Multiple Charges" (rev. May 12, 2014); Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010); State v. Hampton, 61 N.J. 250 (1972); State v. Kociolek, 23 N.J. 400, 421 (1957). Defendant did not request, and the court did not give, the "no adverse inference" charge available to a defendant who elects to exercise his Fifth Amendment privilege not to testify. Model Jury Charges (Criminal), "Defendant's Election Not to Testify" (rev. May 4, 2009).

The State had planned to call the manager of an off-track betting and sports bar in which defendant spent substantial amounts of time between

September 2016 and May 2017.  Because the manager was a rebuttal witness, his name was not read to prospective jurors from the witness list.  Juror number four, a cook at the establishment, recognized the manager while passing him in the hallway after defendant had rested.  The manager immediately told the prosecutor that he recognized the cook.  The prosecutor in turn notified the judge.  When questioned, juror number four explained that since he did not know the reason the manager was present, or even if he was there in connection with the trial, he decided to wait to see if he was a witness before mentioning the subject to the court.  The judge excused the juror without asking him if he had discussed recognizing the manager with other jurors.

Now on appeal, defendant raises the following points of error:

POINT I

THE TRIAL COURT MISTAKENLY EXERCISED ITS DISCRETION BY FAILING TO SEVER CHARGES FROM FOURTEEN SEPARATE INCIDENTS BECAUSE THE PROBATIVE VALUE OF EACH DISCRE[TE] INCIDENT WAS OUTWEIGHED BY THE RISK THAT THE JURY WOULD USE THE OTHER-CRIMES EVIDENCE FOR PROPENSITY.

POINT II

HAVING DECLINED TO SEVER THE CHARGES, THE TRIAL COURT COMPOUNDED THE RISK OF UNDUE PREJUDICE BY FAILING TO INSTRUCT

A-0862-18

THE JURY THAT IT COULD NOT CONSIDER THE FOURTEEN INCIDENTS FOR PROPENSITY.

POINT III

THE TRIAL COURT MISTAKENLY EXERCISED ITS DISCRETION IN PRECLUDING DEFENSE WITNESSES BECAUSE EVIDENCE THAT CARDELL COMPLETED OTHER JOBS UNDER SIMILAR CIRCUMSTANCES WAS RELEVANT TO CARDELL'S INTENT, REGARDLESS OF WHETHER THE JOBS WERE COMPLETED IN THE EXACT TIME PERIOD OF THE CHARGED OFFENSES.

POINT IV

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY [ON] HOW TO EVALUATE ORAL STATEMENTS ALLEGEDLY MADE BY CARDELL AND THAT CARDELL'S ELECTION NOT TO TESTIFY COULD NOT BE CONSIDERED DURING DELIBERATIONS.

POINT V

THE TRIAL COURT DEPRIVED CARDELL OF DUE PROCESS AND A FAIR TRIAL WHEN IT FAILED TO VOIR DIRE JUROR NUMBER FOUR TO ASSESS WHETHER HE DISCLOSED EXTRANEOUS INFORMATION TO THE OTHER JURORS.

POINT VI

THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DEPRIVED CARDELL OF DUE PROCESS

AND A FAIR TRIAL AND WARRANTS THE REVERSAL OF CARDELL'S TRIAL CONVICTIONS.

## I.

A decision not to sever is reviewed under an abuse of discretion standard. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). It should be reversed not on "generalized concern about prejudice, but instead . . . [where] the evidence of one offense would [not] inevitably have been admissible in the trial of the other." State v. Handy, 215 N.J. 334, 354 (2013). A trial court abuses its discretion when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex County Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Defendant contends the trial judge erred in refusing to sever the charges as the sheer number of victims raised a substantial risk the jury would use the evidence improperly. A court need not sever charges if the same evidence underlying one offense would be admissible in the trial for another. Chenique-Puey, 145 N.J. at 341. The issue is analyzed pursuant to Rule 404(b) and State v. Cofield, 127 N.J. 328 (1992). State v. Sterling, 215 N.J. 65, 73 (2013).

Evidence with regard to one offense is admissible in the trial of another when:

> 1.    The evidence of the other crime [is] admissible as relevant to a material issue;
>
> 2.    It [is] similar in kind and reasonably close in time to the offense charged;
>
> 3.    [It is] clear and convincing; and
>
> 4.    The probative value [is not] outweighed by its apparent prejudice.
>
> [Cofield, 127 N.J. at 338.]

In this case, the judge ruled that the evidence supporting each individual count would be admissible in the trials of the others, pursuant to Rule 404(b) and Cofield, because of the significant similarities among all the offenses. Essentially, defendant initiated contact with the victims, took either cash or checks for deposits, and did not return the funds or perform any work.

The similar crimes over a period of months were therefore relevant to a material issue—defendant's intent. They were reasonably close in time. The evidence—each individual victim's testimony—was clear and convincing. This repeated pattern, virtually identical in each case, is highly probative of intent. Intent is a necessary element of theft by deception. The State needed to prove more than just that defendant took the deposits but failed to complete the work.

Thus, the probative value of the evidence was not outweighed by any undue prejudice. See Cofield, 127 N.J. at 338.

Defendant nonetheless argues that the judge erred because the cumulative nature of the testimony created unnecessary prejudice. But in this type of case, defendant's acts when viewed individually were not necessarily criminal—and if viewed individually, could be characterized as necessitating civil relief, not criminal convictions. Only by knowing the extent of defendant's conduct during the nine months at issue could the jury fairly evaluate whether intent had been proven beyond a reasonable doubt. No abuse of discretion occurred. The judge did not err by denying the motion for severance.

Defendant adds that the judge compounded her error of creating undue prejudice by failing to instruct the jury that it could not consider the incidents in order to conclude defendant had the propensity to commit crimes. Thus, defendant asserts, even if joinder was proper, the failure to sua sponte provide a limiting instruction was plain error that had the capacity to produce an unjust result. See R. 2:10-2.

The judge did give the model jury charge related to multiple offenses, which instructs that a defendant is entitled to have each count considered separately by the evidence relevant and material to that charge only. In other

words, the jury was told to consider the charges not en masse, but rather to ask if the State had proven beyond a reasonable doubt each and every element of each individual offense charged. The issue of intent was no doubt resolved by the jury by reference to the other charges, as intent is an element of theft by deception, N.J.S.A. 2C:20-4. But to consider the charges to determine an element—intent—is proper and differs from using the charges to decide defendant had the propensity to commit the crimes.

In State v. Pitts, 116 N.J. 580, 603 (1989), a capital murder case, the Court indicated that where a jury is presented with multiple charges after the denial of a motion to sever, it would have been "preferable . . . for the trial court to have emphasized to the jury its duty to avoid any negative or prejudicial impression that might otherwise be created by the joinder of several criminal charges in a single indictment." But here, not only was the denial of defendant's motion to sever not an abuse of discretion, the probative value of the evidence greatly outweighed the potential for prejudice. The State had to establish intent. The model charge related to multiple counts made clear that the jury had to consider the evidence as to each victim separately from the others.

Defendant did not request a specially tailored instruction or object to the judge giving only the model jury charge on multiple offenses. "Pursuant to Rule

1:7-2, a defendant is required to challenge instructions at the time of trial or else waives the right to contest the instructions on appeal." State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010). "Where there is a failure to object, it may be presumed that the instructions were adequate." Ibid. (quoting State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003)). The court did not err.

## II.

Defendant also argues the trial court mistakenly excluded his thirteen fact witnesses, his past customers, for the period prior to the timeframe at issue in the trial. Again, we do not agree.

"When an individual's state of mind is at issue, a greater breadth of evidence is allowed." State v. Williams, 190 N.J. 114, 125 (2007). This includes "evidence [that] relates to conduct that occurred before the offense." Ibid. See also State v. Rogers, 19 N.J. 218, 228 (1955) ("All evidentiary circumstances which are relevant to or tend to shed light on the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him although they may have occurred previous to the commission of the offense."). However, the "party offering the evidence has the burden of proof to establish its admissibility." State v. Torres, 183 N.J. 554, 567 (2005). We do not agree that the intent to complete the work, shown by defendant's conduct

13

prior to the series of contracts into which he entered during this timeframe, is probative.

Obviously, the judge did admit testimony from customers for whom the work was completed between September 2016 and May 2017 to allow defendant the opportunity to refute any criminal intent. But, as she aptly said in reaching her decision, jobs completed before were simply not probative of his intent concerning the eight victims. A shoplifter could enter a store and not steal twenty times, and only steal the twenty-first—but that does not make his conduct during the twenty prior visits relevant. Here, defendant did not meet his burden of proof to establish the relevance of the earlier jobs. See Torres, 183 N.J. at 567.

III.

Defendant also urges us to conclude the court erred by failing to instruct as to statements made by a defendant. The Hampton/Kociolek charge directs that hearsay statements are to be considered with caution, and that they should be closely examined because of the possibility of misunderstanding or untruth.

The Hampton/Kociolek charge further informs the jury that its "function [is] to determine whether or not [any written or oral] statement was actually made by the defendant, and, if made, whether the statement or any portion of it

14

is credible." Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010). Jurors are told that in considering whether or not an oral statement was actually made by the defendant, and whether it is credible, they

> should receive, weigh and consider this evidence with caution based on the generally recognized risk of misunderstanding by the hearer, or the ability of the hearer to recall accurately the words used by the defendant. The specific words and the ability to remember them are important to the correct understanding of any oral communication because the presence, or absence, or change of a single word may substantially change the true meaning of even the shortest sentence.
>
> [They] should, therefore, receive, weigh and consider such evidence with caution.
>
> [Ibid.]

The instruction goes on to inform the jury that if they decide "that the statement was not actually made, or that the statement is not credible," they must disregard it. Ibid. A judge is mandated to give the instruction whether or not requested by a defendant. State v. Jordan, 147 N.J. 409, 425 (1997).

The failure to give the instruction, however, is not reversible error per se. Id. at 425. Rather, it shifts the responsibility to the State to establish whether defendant's statements were unnecessary to prove his guilt because there was other evidence that clearly established it. Id. at 425-26.

15                                                          A-0862-18

This is one of those instances. The failure to give the instruction was error, but harmless error, because the State's proofs did not hinge upon statements made by defendant. The victims' payments to him, and his failure to perform the work they thought they had bargained for, were the proofs upon which conviction turned. The State presented other evidence besides defendant's statements to prove the crimes. Thus, the court's failure to give the instruction was not prejudicial error.

Defendant takes the position that the court's failure to give the no adverse inference charge was also reversible error. A defendant is entitled to such an instruction when requested. State v. Camacho, 218 N.J. 533, 536 (2014). Defendant did not request the instruction. The issue thus becomes if the failure to give the charge was "clearly capable of producing an unjust result." Id. at 554.

The judge actually mentioned the charge when, on the record, she reviewed with defendant his decision not to testify. Through mere oversight, the judge did not elicit from defendant if he wanted it to be given. In light of the proofs, defendant's argument that the failure to give the adverse inference instruction was prejudicial is unconvincing.

16

IV.

Defendant claims that the judge's decision not to more extensively voir dire juror number four, in order to determine whether he shared his familiarity with the manager in the hallway with other jurors, was reversible error. We consider this argument to be so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(2). The juror did not even know whether the manager was going to be called as a witness or was present in the courthouse for some other reason. The fact, therefore, that he was not asked for the extent of any information he may have relayed to the jury is not consequential. There was nothing for them to learn from him that would have tainted the fairness of the process, as he simply had no knowledge regarding the reason for the manager's presence. The manager was never called to testify.

V.

Finally, relying upon State v. Jenewicz, 193 N.J. 440, 473-74 (2008), defendant contends that the errors committed by the court had a cumulative impact which prejudiced his trial and cast doubt on the fairness of the jury's verdict. This argument lacks merit.

A-0862-18

Even where an error by itself is not dispositive, the cumulative effect can "cast sufficient doubt on a verdict to require reversal." Id. at 473. That is simply not the case here.

The Hampton/Kociolek charge should have been given. The trial court should have specifically asked defendant and his counsel whether the no adverse inference charge should be read to the jury, and instructed the jury accordingly. The cumulative effect of these two harmless errors does not undercut the weight of the State's overwhelming proofs. In light of those proofs, and viewed within the context of the testimony overall, defendant received a fair trial. We look at the instructions as a whole. State v. Garrison, 228 N.J. 182, 201 (2017); State v. Wilbely, 63 N.J. 420, 422 (1973). We assess the alleged errors in the light of the overall strength of the State's case. State v. Chapland, 187 N.J. 275, 289 (2006). Any cumulative effect here does not warrant reversal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0862-18