**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3696-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CRAIG E. GREENE,

     Defendant-Appellant.

_____

Submitted April 15, 2024 – Decided May 17, 2024

Before Judges Gilson, Bishop-Thompson, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 21-06-0537.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Samuel Clark Carrigan, Assistant Deputy Public Defender, of counsel and on the briefs).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Craig E. Greene, was convicted after trial of armed robbery and related offenses. On December 17, 2021, he was sentenced to an aggregate prison term of thirteen years subject to an eighty-five percent parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals his conviction and sentence. We reverse.

We derive the following facts from the record, focusing on those facts necessary for adjudication of the issues before us. This case involves a robbery and theft committed on the same day in Maple Shade Township. On June 5, 2019, the Maple Shade Animal Hospital was robbed by a man armed with a knife. Later that same day, a man stole cash from an Acme grocery store. In a single indictment, the State charged defendant with both crimes. Defendant filed a motion to sever. The trial court denied the application, and defendant was tried for both crimes in August 2021.

At trial, defendant testified he took money from a cash register at the Acme grocery store to purchase the drugs he possessed when arrested. However, defendant denied being responsible for the armed robbery of the animal hospital. The jury convicted defendant of the theft and drug charges. They deadlocked as to the robbery charges. Following a second trial held in September 2021, defendant was

2

convicted on the robbery charges. Defendant appeals the conviction and sentence pertaining only to the second trial.

In mid-afternoon on June 5, 2019, Patrick Middleton, a customer service representative, was seated at the front desk of the Maple Shade Animal Hospital. A man wearing a hooded sweatshirt (hoodie) and armed with a knife entered through the door, approached Middleton, and demanded, "Give me the money." Repeating this demand, the man held a knife within one foot of Middleton's face. Middleton opened a cash drawer under the desk. The robber reached in, removed the cash, and fled.

Also working at the hospital that day was Vicky Raimundo, a veterinarian technician. She did not witness the robbery but assisted others in leaving the hospital during its occurrence via a separate doorway. As she exited the building, Raimundo spotted the suspect and watched him cross the street. She monitored him until he left the area. Later that evening, detectives from the Maple Shade Police Department asked Raimundo to review a photo array. She selected defendant's photo with eighty-five to ninety percent confidence.

A third person, Victoria Flake, was a receptionist at the hospital. She was not working at the time of the robbery but heard of the suspect's description from co-workers. She reported to police that the evening before the incident, a man matching

3 <span>A-3696-21</span>

the suspect's description came into the hospital and asked her to make change for bus fare. Detectives presented a photo array to Flake, who selected defendant's photo. She testified she was "about [ninety-five], [ninety-six] percent sure" the photo she selected was the man who had asked for change.

Detectives never presented Middleton with a photo array. Based on the photo identifications of Raimundo and Flake, police officers arrested defendant, charging him with the robbery. Through the investigation that followed, police recovered a dark blue hoodie in the area of the robbery matching the description of what the robber wore. A DNA sample taken from the hoodie matched a buccal swab sample taken from defendant. Upon arrest, police also recovered from defendant a sum of money in the same amount of the stolen sum.

Middleton, Raimundo, and Flake all made in-court identifications of defendant. On September 30, 2021, the jury returned a guilty verdict on the counts of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2); fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d). In December, the trial court imposed an aggregated prison term of thirteen-years NERA for all offenses, including a sentence for an unrelated crime to which defendant pled guilty.

Defendant raises three arguments on appeal.

POINT I

THE TRIAL COURT ERRED WHEN IT DID NOT
PROVIDE THE CURRENT MODEL JURY CHARGE
REGARDING THE STATE'S FAILURE TO PRESENT
AN ELECTRONIC RECORD OF THE OUT-OF-
COURT IDENTIFICATION PROCEDURE. (Not raised
below).

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE
ERROR WHEN IT FAILED TO EXCLUDE
MIDDLETON'S UNRELIABLE IN-COURT
IDENTIFICATION AND DID NOT PROPERLY
INSTRUCT THE JURY ON HOW TO ASSESS ITS
RELIABILITY.

POINT III

THE TRIAL COURT ERRED IN REASONING AT
SENTENCING THAT A PARTICULAR
AGGRAVATING FACTOR IS ALWAYS PRESENT.

A.    The Jury Instruction on Record of Out-Of-Court Identification
      Procedure.

As to defendant's first point, both parties acknowledge that the trial court

administered an outdated identification charge.  While the trial took place in

September 2021, the charge administered did not contain language from a model

jury charge modified in May 2020.  The updated charge concerned how the jury

should assess a photo lineup where the procedure was not recorded by police.

Defendant argues that failure to administer the updated charge undermined the

5

integrity of the conviction. The State argues the charge administered by the trial court was adequate, because the lineup procedure was in fact recorded, but simply not introduced at trial. Thus, the State contends that any failure to administer the updated charge did not constitute plain error, because the omitted portion of the charge given was not relevant.

There are several time-tested principles that guide us on questions concerning jury charges. "An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. Afanador, 151 N.J. 41, 54 (1997). A jury charge should be reviewed in its entirety to determine the overall effect of the charge. State v. Delibero, 149 N.J. 90, 106-07 (1997). "[I]f on reading the charge as a whole, 'prejudicial error does not appear, then the verdict must stand.'" State v. Ramseur, 106 N.J. 123, 280 (1987) (quoting State v. Council, 49 N.J. 341, 342 (1967)). "A jury charge is presumed to be proper when it tracks the model jury charge verbatim because the process to adopt model jury charges is 'comprehensive and thorough.'" State v. Berry, 471 N.J. Super. 76, 107 (App. Div. 2022) (quoting State v. R.B., 183 N.J. 308, 325 (2005)).

Because there was no objection to the jury charge at trial, we evaluate the consequence of an errant charge under the plain error standard. In the context of a

6

jury charge, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting State v. Chapland, 187 N.J. 275, 289 (2006); see also State v. Burns, 192 N.J. 312, 341 (2007); State v. Jordan, 147 N.J. 409, 422 (1997). "The error must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)). We review a trial court's instruction on the law de novo. Fowler v. Akzo Nobel Chemicals, Inc., 251 N.J. 300, 323 (2022); State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., L.P., 426 N.J. Super. 337, 347 (App. Div. 2012).

At the time of the offense, Rule 3:11 required law enforcement to "contemporaneously record the identification procedure," either with a written verbatim account of the exchange between officers and the witness "or, if feasible, electronically." R. 3:11(b) (2019). If there was no record of the important details of the out-of-court identification procedure, the court could "fashion an appropriate jury charge to be used in evaluating the reliability of the identification." R. 3:11(d) (2019).

In 2019, the Supreme Court held, where unrecorded eyewitness identification is essential to the State's case, the jury needed to be instructed on the requirements of Rule 3:11 and be informed that law enforcement failed to abide by that rule. State v. Anthony, 237 N.J. 213 (2019). In Anthony, the Court asked the Criminal Practice Committee to revise subsection (b) of the rule to emphasize the Court's preference for audio-visual recordings of the identification process. Id. at 231-32. The rule was amended to reflect this preference, effective June 2020. R. 3:11(b) ("A law enforcement officer shall electronically record the out-of-court identification procedure in video or audio format, preferably in an audio-visual format."). The model charge was correspondingly amended to reflect this rule change:

> Where there is a failure to electronically record an identification procedure, you have not been provided with a complete picture. By way of example, without a recording of the identification procedure, you cannot hear the tone or inflection of the witness or police officer's voices. Audio captures not only the words spoken between an administrator and an eyewitness but also tone, and video preserves expressions or gestures as well. That type of information can help the jury accurately assess witness confidence, any feedback the witness may have received, and the overall reliability of an identification – and thus help guard against mistaken identifications. You should weigh later testimony or statements about tone, gestures and demeanor with great caution and care, as later

A-3696-21

recollections may be less accurate than an electronic record. . . .

You may take into account the police failure to preserve a record of the identification procedure when you evaluate the identification evidence in this case. The absence of either an electronic recording or contemporaneous written record permits but does not compel you to conclude that the State has failed to prove that the identification was in fact made and, if so, accurately reported by the State's witnesses.

[Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. May 18, 2020) (citations omitted).]

The omitted portion of the challenged jury instruction applies to the purported failure by police to record out-of-court identification procedures for witnesses Raimundo and Flake. Defendant argues that the trial court should have issued the above instruction after the State did not present to the jury an electronic recording or contemporaneous written account of their identification procedures at trial. By omitting this instruction, defendant maintains the trial court plainly erred in a manner "clearly capable of producing an unjust result." Defendant urges that the verdict be vacated and that the trial court be instructed to hold a Wade/Henderson hearing to determine the reliability and admissibility of the out-of-court identifications. See U.S. v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011). Under Anthony, "a defendant will be

entitled to a pretrial hearing on the admissibility of identification evidence if Delgado and [Rule] 3:11 are not followed and no electronic or contemporaneous, verbatim written recording of the identification procedure is prepared." Anthony, 237 N.J. at 233 (citing State v. Delgado, 188 N.J. 48 (2006)).

The State asserts it did make an audio-visual recording of Flake and Raimundo's participation in the photo array and sent a copy and transcript of the recording to defendant in pre-trial discovery. The State argues there is no case law requiring the out-of-court identification procedure recording to be admitted into evidence – only that it be recorded. Because the State contends defendant was given a copy of the recording before trial, it argues defendant had the opportunity to request a Wade/Henderson hearing or contest the jury instruction. The State conjectures that trial counsel chose to do neither because the recording was decidedly not to defendant's advantage.

In reply, defendant argues the reliability of the out-of-court identifications was a question of fact for the jury to decide and that the State's decision not to present a recording of the identification procedure deprived the jury from accessing "essential information about what occurred during the photo array procedures."

In this case, the State elected not to present recordings of the out-of-court identifications procedures and asks us to assume that those identifications were indeed recorded. Moreover, defense counsel did not request a Wade/Henderson hearing. On appeal, defendant contends the recordings in question were not provided to his trial counsel. Neither the recordings nor the transcripts of the identifications procedures for Flake and Raimundo are part of the record on appeal. R. 2:5-4(a). From the record, therefore, we cannot determine if there were audio-visual recordings of the Flake and Raimundo identifications procedures, and if so, whether defense counsel was provided with the recordings and elected not to pursue a pre-trial hearing.

Irrespective of their availability to this court for review, we agree with defendant that the jurors were entitled to examine the recorded pre-trial identifications procedures. R. 3:11 provides the framework for preservation of the identification procedures employed so that counsel and the trial court are in a position to assess the reliability of a given identification, including system and estimator variables. See Henderson, 208 N.J. at 218. Should the trial court determine the procedure sufficiently reliable, the jury ultimately decides the question. The model and supplemental identification jury instructions presume

either that the jury will have for its consideration an audio-visual record, or, in the event none was created, that the model charge be administered.

Absent a definitive understanding of the procedural status of this matter, and a failure to administer the model charge then in effect, the purpose of the rule is undermined, leading to plain error "clearly capable of producing an unjust result." Identification of the robber was the central issue in dispute at trial. Therefore, the juror needed clear instructions on how to assess out-of-court identifications. Without those instructions, the jury may well have reached an unjust result.

We caution that it is not here decided that the State must in all instances present at trial an audio-visual recording of identification procedures. At the least, however, a record must be made from which an appellate court may make a determination with certainty whether the strictures of Rule 3:11 were followed.

In reaching this conclusion, it is important to note the emphasis the State placed on the lineup procedure in its closing and the absence of a corresponding juror charge to aid the jurors on this issue. In his closing, the prosecutor said:

> So it's 5:55 p.m., Victoria Flake and Vicky Raimundo take part in a photo array, a photo lineup[,] at the Maple Shade Police Department[,] and they each select a photograph of Craig Greene.

12

> We know how the photo lineup goes. It's hardly debatable. Victoria Flake is [ninety-five] percent sure that Craig Greene is the individual that she saw making change for the day before. Vicky Raimundo, as you heard her consistently testify today, [eighty-five] to [ninety-five] percent sure that Mr. Greene is the individual that she saw and she chased out of the animal hospital. She selected the photograph then, a couple hours after it took place. She pointed at him in court today, two years after it took place and gave you the same story, it was Craig Greene.

(Emphasis added).

The jury, however, was not given the opportunity to see the photo procedure the prosecutor referenced in closing. So, the jurors did not "know how the lineup [went]." Here, the gap between what the jurors were told occurred during the lineup procedure and what actually occurred is unbridgeable, thus, clearly capable of producing an unjust result.

B.     The In-Court Identification and Jury Instruction on that Procedure

All three of the State's fact witnesses made in-court identifications of defendant. As to Middleton, there was no out-of-court identification. After full briefing was completed in this case, the Supreme Court issued its decision in State v. Watson, 254 N.J. 558 (2023), instituting new procedures concerning first-time in-court identification witnesses. Watson involved a bank robbery in which the bank teller selected an individual other than the defendant, Quintin Watson, in an initial

photo lineup. The teller was later called at trial and permitted to testify. Before appearing in court, the teller met with the prosecutor, who advised defendant would be seated at defense counsel's table. In court, the teller identified Watson as the culprit, and he was convicted. There was no other corroborating evidence. Recognizing the potency of an in-court identification and wary of the reliability of coached eyewitness testimony absent corroborative evidence, the Court instituted new procedures concerning first-time in-court identification witnesses. The Court held that henceforth, (1) the State must file a motion in limine when it intends to conduct a first-time in-court identification, followed by a hearing where the parties and the court explore whether good reason exists; (2) prosecutors must disclose in writing anything discussed with a witness during trial preparation that relates to an upcoming in-court identification; (3) any hearing needed to determine admissibility should be conducted and resolved before start of trial. Id. at 588.

In a post-briefing submission, the State notes that the holding in Watson is prospective and thus not applicable to this case. Also, pointing to the DNA evidence and the corroborative sums of cash recovered from defendant, the State suggests that Watson's safeguards are not a concern, because in Watson there were no corroborative proofs.

A-3696-21

While not retrospective in application, the holding in <u>Watson</u> informs our analysis. Because we find plain error with respect to defendant's second argument, we need not reach the question of plain error on the in-court identification. We note, however, that in any new trial, the procedures set forth in <u>Watson</u> will apply and will need to be followed. Further, to avoid any other error, we point out that the charge administered by the trial court erroneously read:

> The State has presented the testimony of Vicky Raimundo and <u>Patrick Middleton</u>. You will recall that these witnesses identified the defendant in court as the person who committed the offenses of [a]rmed [r]obbery, [u]nlawful [p]ossession of a [w]eapon and [p]ossession of a [w]eapon for an [u]nlawful [p]urpose.
>
> The State has also presented testimony that <u>on a prior</u> occasion before this trial, <u>these witnesses</u> identified the defendant as the person who committed the aforementioned offenses.
>
> (Emphases added).

The second witness to make an identification on a prior occasion was Flake, not Middleton. Moreover, the court should have tailored its charge as to Middleton and administered the model charge for in-court identification only. <u>Henderson</u>, 308 N.J. at 302; <u>see also</u> <u>Sanchez-Medina</u>, 231 N.J. at 466 (citation omitted); <u>Model Jury Charges (Criminal)</u>, "Identification: In-Court Identification Only" (rev. July 19, 2012).

A-3696-21

To ensure compliance with our evolving jurisprudence and in the interests of justice, we direct that on remand Middleton's first-time in-court identification must be scrutinized pursuant to Watson.

C.    Remarks at Sentencing

Because we reverse defendant's conviction, we do not reach defendant's third argument concerning the trial court's comments about aggravating factor nine "always" being present.  We are confident the court is mindful of the distinction between specific and general deterrence, and the need to articulate its findings in imposing sentence after making an individualized assessment of defendant based on the facts of the case.  See State v. Jaffe, 220 N.J. 114, 122 (2014); N.J.S.A. 2C:44-1(a)(9).

Reversed and remanded for new trial.  Before the new trial, the trial court shall determine whether to conduct a Wade/Henderson hearing with respect to Flake and Raimundo and whether to conduct a Watson hearing with respect to Middleton.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION